|,KLEES, Chief Judge.
On May 2, 1996, Kevin Jordan, Gerald Williams, and appellant Henry Talley were indicted for first-degree murder relative to the drive-by shooting of twelve-year-old Wendell McGuffey on March 8, 1996. Williams pleaded guilty to manslaughter, and the charges against Jordan and Talley were severed for trial.[1] Following a jury trial on January 27 - 29, 1997, the appellant was found guilty of second-degree murder. On February 28, 1997, the trial court denied appellant’s motions for judgment of acquittal and for new trial and, following a waiver of the statutory delay, sentenced the appellant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant’s motion for out-of-time appeal was granted. Defendant now appeals on the basis of two assignments of error. We affirm.

STATEMENT OF THE FACTS

On the afternoon on March 7, 1996, Attorney J.T. Hill received a call from Kevin Jordan who was looking for work. Jordan had done odd jobs for Hill in the past. Hill agreed to find some jobs for Jordan and went to Canal Street in his green | j,Ford Taurus to pick him up. When Hill got there, Gerald Williams, previously unknown to Hill, was with Jordan. Williams and Jordan took the vehicle from Hill after a struggle. According to the testimony of Gerald Williams, he and Kevin Jordan and Dennis Comacha drove around in the Taurus for about three hours that afternoon, looking for Darnell Roussell.
On the evening of the next day, March 8, 1996, twelve-year-old Wendell McGuffey was trying to repair a mini-bike at 2920 Palmyra Street when he was shot in the head by Kevin Jordan, a passenger in the green Ford Taurus. The victim died a day or two later from brain damage and loss of blood. According to various witnesses, the shooting was directed at Darnell Roussell, but McGuffey was hit instead. The shooting was believed to be in retaliation for the killing of a previous victim, Darryl Marshall. Jordan was shot in the buttocks in that previous incident. At the time of the instant shooting, in addition to Jordan there was a driver and another passenger in the Taurus.
Shortly after the shooting, Roussell identified Kevin Jordan as the shooter and Dennis Comacha as the driver of the Taurus. At a subsequent photographic lineup he again identified Comacha as the driver, although at trial he stated he only identified who Camacha was and did not state that he was the driver. When asked who the driver was at trial, Roussell hedged and stated that it “looked like” Dennis, but it could have been Gerald (Williams). He also stated that there was a third person in the backseat “sticking up trying to see who I was.”
Roussell also testified that the weapon fired by Jordan looked like a 9 mm. When questioned about a conversation with OIDP investigator Jerry Reed, Roussell testified that he stated only that he did not know who was driving.
la A second eyewitness, Levar Rickmon, also identified Dennis Comacha as the driver of the Taurus. He also subsequently identified Comacha as the driver from a photographic lineup. He admitted at trial however that he only glanced at the car and didn’t get a positive look, but he saw a flash of gold teeth on the driver and noticed he was wearing a hood. In addition, Rickmon admitted that he told OIDP investigator Reed that the defendant was not the driver of the vehicle when the shooting occurred. Rickmon also testified *1187 he did not see defendant, in the car on the night of the shooting. He also testified the gun that was being used was a black revolver.
Comacha was asked by the defense to open his mouth and show his teeth to the jury. Further, the defendant stated that he had two gold teeth. The defense also asked Camacha and the defendant to stand next to each other, in an apparent attempt to show that the two men had similar appearances.
Jerry Reed, an investigator for the defendant, testified that he met with Roussell at his grandmother’s house shortly after the shooting, at which time Roussell told him that Kevin Jordan was the shooter, and that the defendant was not the driver. At a meeting in the hallway prior to trial, Roussell maintained to Reed that the defendant was not in the car, and was not even in the area of the shooting.
The victim’s cousin, Anthony McGuffey, was outside with Darnell Roussell and Le-var Rickmon on the night of the shooting, but testified that he was too busy getting out of the way and so did not get a look at the driver or the passengers of the Taurus. However, according to lead detective Michael Mims, Anthony McGuffey identified Kevin Jordan as the shooter when he was shown the photographic lineup at the grand jury hearing.
|4Based upon the identifications of Dennis Comacha as the driver, the police obtained a warrant for his arrest. Following his arrest on March 12, 1996, Comacha identified the defendant in connection with the murder. Det. Mims then obtained search and arrest warrants for the defendant. Upon execution of those warrants, the police found a chrome .38 caliber revolver under the defendant’s pillow, which was later determined to be the murder weapon. Ballistics tests comparing pellets found at the crime scene revealed they were fired from the chrome revolver found in Talley’s bedroom. The police also recovered from Talley’s bedroom a box of .38 caliber bullets, but not the same type found in the autopsy and the murder scene. In addition, the police seized starter jackets and caps that were similar to those described by witnesses as worn by the shooter and driver of the Taurus. When arrested, the defendant told the police that whatever they found was his; his family had nothing to do with it.
Gerald Williams also testified at trial. He admitted to being the backseat passenger when the shooting occurred. He was permitted to plead guilty to manslaughter and received a ten-year sentence in exchange for his testimony. Williams testified that, earlier in the day of the instant shooting, he and Jordan and Dennis Coma-cha were driving around in the car that he and Jordan had forcefully stolen from lawyer J.T. Hill the day before. Williams further testified that, around seven or eight o’clock in the evening, they dropped off Comacha and picked up the defendant. When they did that, Jordan went into the defendant’s house to get him. He testified that both Jordan and defendant had on starter jackets on the night of the shooting. They then went looking for Sean (Johnson), because “he had another gun.” When they could not find Sean, they went on to Palmyra Street to look for Darnell. Williams further testified that he ducked down in his seat when he heard | sthe shots ring out.
Dennis Comacha testified that he was arrested for the murder charge, but that he did not make a deal with the police. He admitted to being in jail on a probation violation for an original offense of distribution of marijuana. He denied ever seeing Kevin Jordan drive the Taurus, but admitted seeing Gerald Williams drive it. He further admitted that he was in the Taurus earlier in the day on the day of the shooting. He denied ever owning a gun like the murder weapon, or any other gun. Coma-cha invoked his Fifth Amendment rights when asked if he ever drove around with Kevin Jordan on March 7 in an attempt to shoot Roussell. He also took the Fifth Amendment when questioned about the beating of J.T. Hill and theft of the Tau *1188 rus. As to the shooting of Wendell McGuffey, he testified that at the time of the shooting he was babysitting his younger brothers and little sister at his mother’s house.
Kaneisha Earlycutt, the defendant’s girlfriend, testified she and the defendant were at the defendant’s mother’s house on Governor Nicholls Street on the night of the shooting. The defendant also testified that he was with Ms. Earlycutt and his mother on the night of the shooting. He further testified that he got the gun from Dennis Comacha on March 9, 1996, the day after the shooting, in exchange for three bags of cocaine. He testified that he previously owned a .38 caliber revolver to protect himself after being robbed three times. He further testified that the police took the other gun so he was replacing it. He testified that one of the starter jackets belonged to him, but the others belonged to other family members.

ERRORS PATENT REVIEW

IfiA review for errors patent reveals none.

ASSIGNMENT ONE

The appellant argues that the trial court erred in failing to grant a mistrial when the State elicited testimony regarding the seizure of firearms that had been ordered suppressed. The search of the defendant’s residence resulted in the recovery of the Rossi chrome .38 caliber revolver under the defendant’s pillow, which was subsequently determined to be the murder weapon. In addition, the police recovered narcotics and a duffel bag that contained a black semi-automatic pistol and a sawed-off shotgun. Following the hearing on the motion to suppress, the trial court ruled that only the murder weapon was admissible. The State applied for a writ from this court. On September 24, 1996, at 96-K-1989, this court denied that application. On October 24, 1996, at 96-2668 (La.10/24/96), 681 So.2d 347, the Louisiana Supreme Court also denied the State’s writ application.
La.C.Cr.P. art. 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
17Relevant evidence is defined at La. C.E. art. 401 “as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” However, the trial judge should exclude circumstantial evidence, even though logically relevant, if its probative value is outweighed by the risk that its admission will consume too much time, unnecessarily confuse the jury concerning the issues to be determined, tend to excite emotions of the jury to the undue prejudice of the opponent, or unfairly surprise the opponent. State v. Davenport, 445 So.2d 1190 (La.1984); State v. Ludwig, 423 So.2d 1073 (La.1982); La. C.E. art. 403.
In the instant case, the trial court and both reviewing courts concluded that the additional weapons were unduly prejudicial and inadmissible at trial. However, appellant complains that the State impermissi-bly elicited testimony relative to the other weapons in the direct examination of Offi *1189 cer Lawless, who was asked to identify various State exhibits, as follows:
Q. State Exhibit No. 35?
A. It’s a green duffel bag that was found in—
THE COURT:
Wait. You can’t ruffle the paper and talk at the same time. Look at it and then identify it.
THE WITNESS:
(Witness complies.) It’s a green duffel bag that was found in Mr. Talley’s bedroom, which contained some weapons.
BY MR. WOODS (Assistant D.A.) CONTINUED:
Q. And the final exhibit that I’m going to show you—
I «MR. CIOLINO:
Your Honor, can we approach for one minute?
Following the sidebar, the State asked no further questions about the weapons in the duffel bag. Rather, the prosecutor continued questioning the witness regarding identification of the murder weapon. The testimony was as follows:
BY MR. WOODS CONTINUED:
Q. Can you identify this weapon? Just say “yes or no”?
A. Yes, I can.
Q. What kind of weapon is it?
A. It’s a Rossi .38 caliber weapon.
Q. Did you retrieve this from Mr. Talley’s residence.
A. From?
Q. Yes.
A. Yes.
At the conclusion of Officer Lawless’s testimony, outside the presence of the jury, the defense moved for a mistrial on the basis that Officer Lawless had referred to the additional weapons which had been ruled inadmissible. The trial judge recalled that the State used a plural, but that the jury probably did not notice it, since subsequent questioning concerned only the murder weapon. The trial court denied the mistrial, concluding that the jury probably did not notice Officer Lawless’ testimony that “some weapons” were found in the duffel bag.
Defense counsel apparently did not request an admonition in this case. In the instant case, defense counsel moved for a mistrial, apparently believing that an admonition would only call further attention to the inadmissible evidence. | Nevertheless, we find the trial court’s denial of a mistrial was not erroneous. The trial court’s .determination that the jury probably did not notice the plural used by Officer Lawless is reasonable, especially in light of the immediate continuation of his testimony following the sidebar which solely related to the murder weapon. Further, although the duffel bag was identified at trial, the State did not offer it into evidence for viewing by the jury, and the record is insufficient to show that the State intentionally elicited the information about the contents of the bag from Officer Lawless. Under the circumstances presented here, we conclude that Officer Lawless’ testimony was not unduly prejudicial to the defendant and that the trial court did not err in failing to grant a mistrial.
Moreover, even assuming the testimony was prejudicial and that the trial court erred in failing to grant a mistrial, we find this to be harmless error.
In State v. Corley, 93-1934, pp. 5-6 (La.3/11/94), 633 So.2d 151, 154, cert. denied, 513 U.S. 930, 115 S.Ct. 322 (1994), the Louisiana Supreme Court discussed the harmless error rule, as follows:
This Court has both the authority and the obligation to review the record de novo to determine an error’s harmfulness. State v. Smith, 600 So.2d 1319 (La.1992); see also Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In doing so, we must begin with the premise that the other, lawfully admitted evidence is sufficient to support the jury’s verdict, Satterw[h]ite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). The task of a reviewing court conducting a harmless error analysis is to determine *1190 whether the error contributed to the verdict or whether “the force of the evidence presumably considered by the jury in accordance with the instructions [of the court] is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [error].” Yates v. Evatt, 500 U.S. 391, 405, 111 S.Ct. 1884, 1893-94, 114 L.Ed.2d 432 (1991).
We have carefully reviewed the entire transcript in this case and find that the evidence produced by the State indicates the verdict against defendant would | mhave been the same without Officer Lawless’ testimony. Although we recognize that the State’s two eyewitnesses, in statements and photographic lineups shortly after the incident, initially identified Dennis Coma-cha as the driver of the vehicle from which the shots were fired, Darnell Roussell withdrew that identification at trial and stated that he was not sure who was driving the vehicle. Further, Levar Rickmon testified that he only got a glance at the vehicle and saw a flash of gold teeth on the driver of the vehicle. Although the record shows that Dennis Comacha had gold teeth, the defendant also had gold teeth. The jury could have reasonably concluded that Roussell and Rickmon’s initial identifications of the driver were erroneous, especially in light of the fact that shots were being fired from the car in their direction.
Further, the State produced the testimony of Gerald Williams, who admitted he was in the car on the night of the shooting and further stated that Henry Talley was the driver of the vehicle. Although Williams also testified that Comacha was with him and Kevin Jordan the day before the shooting when they rode around looking for Roussell, he stated that Comacha was not in the car on the night of the shooting. Comacha was originally charged as one of the perpetrators, but those charges were dropped when Comacha told the police that he got exited the vehicle before the murder.
In addition to Williams’ testimony, the State also introduced evidence that defendant was in possession of the murder weapon, as well as starter jackets and caps which were similar to those worn by the perpetrators during the crime. The jury apparently chose to discredit the testimony of defendant, who stated he obtained the murder weapon after the shooting by trading Dennis Comacha for drugs. Rather, the jury apparently credited the testimony of Gerald Williams, the InSixteen-year-old who admitted he obtained the vehicle with Kevin Jordan and was in the vehicle at the time of the shooting. Wilhams stated that defendant was the driver of the vehicle. We find the evidence introduced by the State, notwithstanding the testimony of Officer Lawless, proved defendant’s guilt beyond a reasonable doubt.
This assignment has no merit.

ASSIGNMENT TWO

The appellant avers that trial counsel’s assistance was ineffective for their failure to move for a mistrial when the State suggested that the appellant shot and killed his brother-in-law.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986).
The defendant’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel’s performance was defi *1191 cient and that the deficiency prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
If an alleged error falls “within the ambit of trial strategy” it does not “establish ineffective assistance of counsel.” State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir.1986). Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
The subject reference occurred in the course of cross-examination" of the defendant. The defendant testified that he heard from his brother-in-law, Sean Johnson, that Dennis Comacha was ' around Bienville and Conti Streets with a gun to sell. The D.A. continued questioning the defendant, as follows:
Q. And Sean Johnson is dead, isn’t he?
A. Yes, sir. He got deceased November 13,1996.
Q. He got shot up, didn’t he?
A. Yes, sir.
Q. I’m curious about something. Do you do a lot of target practicing?
[13A. Target practicing?
Q. Yeah.
A. What kind of question is that? Do I - no, I don’t do no (sic) target practice.
Q. With guns?
A. No sir.
The D.A. then proceeded to question the defendant as to why the box of bullets retrieved from his room had bullets missing.
La.C.Cr.P. art. 770 provides for a mistrial, or an admonishment if that would be sufficient, when the D.A. or other court official refers to an otherwise inadmissible other crime alleged to have been committed by the defendant. In this case, counsel for defendant faded to move for either a mistrial or an admonishment.
However, the record on appeal is insufficient for this court to determine why counsel failed to act. Because this court cannot determine whether counsel’s inaction was a reasonable, albeit unsuccessful, trial strategy, this assignment may not be reviewed on appeal. Accordingly, this assignment would be more appropriately raised in an application for post conviction relief.

CONCLUSION

Accordingly, for the reasons assigned herein, the conviction and sentence of defendant Henry Talley are hereby affirmed. Defendant’s right to claim ineffective assistance of counsel in an application for post conviction relief is preserved.

AFFIRMED.

. Jordan was tried after the appellant. He was found guilty of first-degree murder, though the jury opted for life imprisonment. On May 9, 1997, Williams was sentenced to serve ten years at hard labor, and Jordan was sentenced to serve life imprisonment without parole.