756 So.2d 1206 (2000)
STATE of Louisiana, Appellee,
v.
Devin Reece JETTON, Appellant.
No. 32,893-KA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 2000.
Rehearing Denied May 4, 2000.
*1210 John M. Lawrence, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Robert Randall Smith, Assistant District Attorney, Counsel for Appellee.
Before WILLIAMS, PEATROSS and KOSTELKA, JJ.
WILLIAMS, J.
A jury convicted the defendant, Devin Reece Jetton ("Jetton"), of three counts of simple burglary of a vehicle, LSA-R.S. 14:62. After a subsequent adjudication as an habitual offender, Jetton was sentenced to three consecutive six-year sentences for each count. The sentences were to run consecutively with any other sentence that Jetton may have been serving. The court also ordered Jetton to pay a $1,000 fine for each count. Jetton appeals his convictions and sentences. For the following reasons, we affirm Jetton's convictions and sentences. However, we delete the fine portion of the sentences. Jetton's secondfelony habitual offender adjudication is also affirmed.

FACTS
On October 12, 1998, Jetton was charged by bill of information with three counts of simple burglary. Count one involved the burglary of a truck located at 2509 Tillman Drive in Bossier City, Louisiana, on October 27, 1997; count two involved the burglary of a truck located at 2503 Tillman Drive in Bossier City, Louisiana, on October 27, 1997; (collectively referred to as "Tillman"), count three involved the burglary of a car located at 409 Whispering Pines in Haughton ("Haughton"), Louisiana, on October 21, 1997. Three other suspects were implicated in the offenses. Police arrested Jetton on an unrelated house burglary charge. During his interview with police on that offense, on October 31, 1997, Jetton took police to the three vehicle burglary locations involved in the present offenses. Jetton gave a second statement to police on November 3, 1997, in which he admitted only to being present at the Haughton offense.
Prior to trial, Jetton sought to suppress his custodial statements including his identification of the crime locations made on October 31, 1997 to Officers Thomas Delrey and Robert McArthur. Finding that *1211 Jetton had been induced to give his statement by promises made to him by the officers, the court ruled the statements inadmissible.
During trial, Jetton also sought to have his November 3, 1997 statement to Officer Tony Staton ("Staton"), in which he admitted to participating in the Haughton burglary, declared inadmissible. Finding that the original inducement for the original statement and identifications had been removed, the court allowed Staton's testimony regarding the second statement at trial.
In addition to Staton's testimony, the state presented the testimony of the three victims who testified that personal items had been removed from their vehicles without their consent, and the burglary scene investigating officers who corroborated the victims' testimony regarding the offenses. Two of Jetton's co-defendants, Troy Twigg ("Twigg") and Kenneth Skaggs ("Skaggs"), also testified. According to Twigg, Jetton was aware that they were going to commit the Tillman burglaries and Jetton and Skaggs waited in the vehicle while Twigg and the other co-defendant, Normandin, got out of the car to commit the Tillman burglaries. Twigg also testified that Jetton actively participated in the Haughton burglary. Contrary to an earlier statement, Skaggs denied Jetton's involvement in any of the burglaries. The prosecutor sought to impeach Skaggs' trial testimony with an earlier custodial statement in which he implicated Jetton in the Tillman burglaries. After the presentation of this evidence, a unanimous jury convicted Jetton on all three counts of simple burglary.

DISCUSSION

Sufficiency of the Evidence
In assignment of error number two, Jetton argues that the evidence was insufficient to convict him as a principal to the Tillman burglaries.[1] Jetton failed to file a motion for post-verdict judgment of acquittal, in accordance with LSA-C.Cr.P. art. 821. Nevertheless, this court has held that a claim of sufficiency of the evidence may be raised by assignment of error on appeal. State v. Green, 28,994 (La.App.2d Cir.02/26/97), 691 So.2d 1273.
When issues of both sufficiency of the evidence and trial errors are raised on appeal, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731 (La.1992). This review includes the entirety of the evidence, including admissible and inadmissible evidence which was erroneously admitted. Id.
The proper standard for appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. The facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
To convict a defendant of simple burglary, the state must prove that the defendant *1212 gained unauthorized entry into a vehicle or structure with the specific intent to commit a felony or theft therein. LSA-R.S. 14:62.
Because there was no evidence that Jetton entered either vehicle located on Tillman drive, the state had the burden of showing that Jetton was a principal to the offense. LSA-R.S. 14:24. To be guilty as a principal to such a burglary, the offender does not have to personally enter the burglarized structure. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). Rather, the state has to show that Jetton was concerned in the commission of the crime, aided or abetted in its commission, or directly or indirectly counseled another to commit the crime as a principal. LSA-R.S. 14:24.
Only those persons who knowingly participate in the planning and/or execution of a crime are principals. State v. Pierre, 93-0893 (La.02/03/94), 631 So.2d 427. Mere presence at the scene is not enough to "concern" an individual in a crime. Id. Moreover, a person may only be convicted as a principal for those crimes for which he personally has the requisite mental state. Id. Knowledge that a crime will be, or has been, committed is insufficient by itself to convict a person as a principal. State v. Cayton, 98-100 (La. App. 3d Cir.10/28/98), 721 So.2d 542.
In the instant case, Twigg's trial testimony connected Jetton to the Tillman burglaries.[2] While the victims' and investigating officers' testimony established that the items had been taken without permission from two vehicles located on Tillman Street in Bossier City, Louisiana, none of that testimony associated Jetton with the offenses. Likewise, Jetton's November 3, 1997 statement to Staton only acknowledged his presence at the Haughton burglary.
At trial, Twigg testified that all four men left the home where they resided together and went out to break into vehicles. He testified that Skaggs and Jetton waited in the car which Skaggs drove while he and Normandin actually burglarized the vehicles on Tillman Drive. On cross-examination, Twigg indicated that he did not know if Jetton knew when the burglaries had actually occurred. In response to defense counsel's inquiry, Twigg further testified that Jetton "might have been asleep" in the car while he and Normandin were actually breaking into vehicles. According to Twigg, neither Jetton nor Skaggs received any of the proceeds from the sale of the burglary items because only Twigg and Normandin actually entered the vehicles.
We find the evidence sufficient to convict Jetton as a principal to simple burglary of the vehicles on Tillman Street. A jury may convict upon a co-defendant's uncorroborated testimony. State v. Matthews, 450 So.2d 644, 647 (La.1984). The state proved through the testimony of Twigg, the co-defendant, that Jetton knowingly participated in the planning of the crimes and accompanied his co-defendants to the scene where the crimes were committed. Further, the record reflects that the jury was aware that Twigg and Jetton had actually committed the Haughton burglary six days prior to the early morning Tillman burglaries.
Viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have *1213 found, beyond a reasonable doubt, that Jetton was a principal to the Tillman burglaries and was equally as culpable as the others. LSA-R.S. 14:24.

Admissibility of Custodial Statement
Jetton next argues that his statements to Staton on November 3, 1997, should have been suppressed for the same reasons that the trial court held inadmissible his October 31, 1997 statement and identification of the burglary locations. The trial court found the October 31 statement and identification involuntary due to police officers' promises regarding Jetton's charges and bond reduction. Jetton argues that because his reliance on police promises was not limited to certain police officers, his statements to Officer Staton should have also been ruled inadmissible.
In the November 3, 1997 statement, Jetton told Staton that he and two co-defendants drove to the Haughton home and Jetton remained in the vehicle while another co-defendant burglarized the vehicle.
The erroneous admission of a confession is a trial error which is subject to the harmless error analysis. State v. Tart, 93-0772 (La.02/09/96), 672 So.2d 116, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996). This court has both the authority and the obligation to review the record de novo to determine an error's harmfulness. State v. Smith, 600 So.2d 1319 (La.1992). In doing so, we begin with the premise that the other lawfully admitted evidence is sufficient to support the jury's verdict. Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). The task of the reviewing court conducting a harmless error analysis is to determine whether the error contributed to the verdict or whether the force of the evidence presumably considered by the jury in accordance with the instructions of the court is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the error. State v. Talley, 98-0282 (La.App. 4th Cir.11/17/99), 748 So.2d 1184.
Under the facts of this case, even if we were to find that the statement was erroneously admitted, any error would have been harmless to Jetton's conviction for the Haughton burglary. The victim of the burglary testified that Jetton had lived with him for a short period of time prior to the burglary; accordingly, Jetton was familiar with the residence. Regarding this burglary, Twigg testified, "Well, Devin [Jetton] went out there and broke into the car." Twigg was aware of this fact because Jetton came to him and told him that he could not get the radio out of the vehicle. Twigg then accompanied Jetton to the Haughton address and saw that the window of the vehicle was already broken. Twigg physically removed the radio from the vehicle.
An accomplice is a competent witness to testify against his coperpetrator even if the prosecution offers him inducements to testify; those inducements only affect the witness' credibility. State v. LaRocca, 168 La. 204, 121 So. 744 (1929); State v. Jenkins, 508 So.2d 191 (La.App. 3d Cir.1987), writ denied, 512 So.2d 438 (La.1987). The credibility of a co-defendant's testimony is not within the province of the court of appeal to decide. State v. Reynaga, 93-1520 (La.App. 3d Cir.10/05/94), 643 So.2d 431. Rather, credibility evaluations are well within the province of the jury as trier of fact. Id., citing State v. Shepherd, 332 So.2d 228 (La.1976).
The record reflects that Twigg's testimony directly links Jetton to the Haughton offense and shows that the defendant actively participated in the crime. Staton's testimony can be viewed as only corroborating Twigg's statements by merely placing Jetton at the scene of the burglary *1214 and confirming that Jetton knew that the others were committing a burglary. With the strength of Twigg's testimony and this jury's obvious trust in it, we find that any erroneous admission of Staton's statements was harmless beyond a reasonable doubt.

Other Crimes Evidence
In assignments of error numbers three and four, Jetton argues that the trial court erred in failing to sustain his objections to other crimes evidence in Skaggs' custodial statement and in failing to grant his motion for mistrial based upon the prosecutor's reference to other crimes evidence in his closing argument and opening statement.
We first note that because Jetton failed to object to remarks made in opening statements, he is precluded from raising on appeal any error or irregularity in those remarks. LSA-C.Cr.P. art. 841; State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Jetton also contends that the following statement by the prosecutor in his closing argument referred to other crimes evidence:
It's our position from the state of Louisiana that these four men at various times broke into cars. In this particular case against Devin Jetton, I ask you againI mentioned it earlierask you again to exclude other crimes because just as I asked Mr. Delrey, did Mr. Skaggs give you information about, you know, at least twelve different burglariessome of them were involved in a great many of the burglaries. We billed Mr. Jetton with three burglaries; those where we had other co-defendants, who at the time were willing to give statements implicating Mr. Jetton; which Troy Twigg has done. Mr. Skaggs had originally gave the taped statement implicating Devin Jetton especially in the Tillman....
At this point in the statement, Jetton objected and moved for a mistrial based upon an improper reference to other crimes evidence. The court denied this motion, but admonished the jury not to consider other crimes as evidence of guilt in the charged offenses.
We cannot agree that the prosecutor's statements qualify as a "direct or indirect" reference to other crimes committed by Jetton. LSA-C.Cr.P. art. 770. Rather, they are references to other crimes committed by a witness. Even so, Jetton was afforded ample protection from prejudice by both the prosecutor's and trial judge's admonishments to the jury not to consider evidence of other crimes committed by other defendants. We find no merit to this portion of Jetton's argument.
Jetton also complains that the taped statement used to impeach Skaggs regarding his testimony about the Tillman burglaries erroneously referred to other crimes evidence. Jetton objected to the playing of the tape to the jury on those grounds. The court allowed the entirety of the statement to be played to the jury for impeachment purposes because Skaggs testified that he could not remember whether he made certain statements which were contained throughout his custodial statement.
In this statement, Skaggs referred to three burglary incidents. The first was a generic reference to the crime for which he and Jetton had been taken into custody the night before the statement was given. Skaggs implicated Jetton in that crime. The second was a reference to a crime in which Jetton was not involved. The third was a reference to Jetton's participation in the Tillman burglaries.
Clearly, Skaggs' discussion of Jetton's part in the Tillman burglaries is not a reference to other crimes evidence because it was an offense for which Jetton was on *1215 trial. Moreover, Skaggs' reference to a crime to which Jetton had no connection cannot form the basis of a prejudice claim. State v. Burrell, 561 So.2d 692 (La.1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991).
The remaining portion of the statement, however, refers to evidence of another crime for which Jetton was not on trial. Nevertheless, the erroneous introduction of other crimes evidence is subject to a harmless error analysis. State v. Plaisance, 32,489 (La.App.2d Cir.10/27/99), 745 So.2d 784; State v. Birklett, 32,261 (La.App.2d Cir.12/08/99), 749 So.2d 817. The appropriate inquiry is whether the verdict actually rendered was surely unattributable to the error. State v. Wafer, 31,078 (La.App.2d Cir.09/23/98), 719 So.2d 156, writ denied, 99-1114 (La.10/01/99), 747 So.2d 1137.
We consider the nature of the testimony important to this harmless error analysis. The other crimes evidence at issue was contained in a statement utilized to impeach Skaggs regarding his testimony concerning the Tillman burglaries, not as substantive evidence of Jetton's guilt. Because the trial testimony was related to charged crimes, it is not unreasonable that the jury would have been focused only on the inconsistent custodial statements the witness made to the officers regarding the Tillman offenses and not extraneous information regarding other crimes evidence.
Furthermore, prior to deliberation, the trial court instructed the jury regarding the use of prior inconsistent statements, again focusing the jury's inquiry on those statements which may have been inconsistent with Skaggs' trial testimony relating to the Tillman offenses. Of equal importance in this analysis are the abovenoted admonitions to the jury regarding the prohibition against consideration of any other evidence except that which related to the charged offenses.
Finally, when combining these considerations with the strong evidence of guilt presented through Twigg's testimony, we find that any impressions the other crimes evidence may have given the jury regarding the charged offenses were insignificant. Accordingly, any error in the admission of this evidence is harmless.

Scope of Impeachment
In assignment of error number five, Jetton claims that the trial court erroneously afforded the prosecutor two opportunities to impeach Skaggs' trial testimony. However, Jetton only objected to the tape being played due to its reference to other crimes evidence. He cannot now raise a new objection for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Cressy, 440 So.2d 141 (La.1983).
Jetton also argues that Skaggs' statements were used as substantive evidence of Jetton's guilt through the prosecutor's closing arguments which encouraged the jury to believe Skaggs' initial statement to police. Again, because Jetton did not object to these particular statements of the prosecutor, he cannot now urge any error or irregularity in them. LSA-C.Cr.P. art. 841; State v. Bosley, supra. We, accordingly, find no merit to either of Jetton's arguments in this assignment of error.

Habitual Offender Adjudication
In assignment of error number six, Jetton argues that his second-felony habitual offender adjudication should be vacated and the matter remanded for resentencing in accordance with LSA-R.S. 15:529.1 D(1)(a). Specifically, Jetton argues that the trial court failed to advise him of the nature of the allegations in the habitual offender bill, his right to be tried as to the truth of the allegations, and the right to remain silent pursuant to LSA-R.S. 15:529.1 D(1)(a).
*1216 While raising a valid point as to the trial court's failure to inform Jetton of his right to remain silent at the habitual offender hearing, Jetton confuses the requirements of Section 529.1 D(1)(a) with the requirements of Section 529.1 D(3).
Section 529.1 D(1)(a) addresses the arraignment of a defendant prior to a multiple offender hearing. This provision requires the court to inform the defendant of the allegations contained in the information, his right to be tried as to the truth thereof and requests that the defendant say whether the allegations are true. In this case, Jetton entered a counseled not guilty plea at his January 13, 1999 arraignment. While we agree that bare compliance with Section 529.1 D(1)(a) is evident from the record, we nevertheless find that the court's acceptance of Jetton's counseled not guilty plea satisfies the requirement that the offender say whether the allegations are true. See State v. Johnson, 432 So.2d 815 (La.1983).
The court is required, however, to inform a defendant of his right to remain silent at the habitual offender hearing if he acknowledges or confesses in open court that he has been convicted of a prior felony or felonies. LSA-R.S. 15:529.1 D(3). State v. Johnson, supra; State v. Coleman, 96-525 (La.App. 3d Cir.10/07/98), 720 So.2d 381. Because, in this case, Johnson took the stand on his own behalf and admitted his prior felony, the trial court erred in failing to advise him of his right to remain silent prior to giving his testimony. Id.
Such an error is harmless, however, if the state introduces independent proof of the defendant's prior conviction. State v. Coleman, supra; State v. Demouchet, 95-1554 (La.App. 3d Cir.11/06/96), 684 So.2d 21; State v. Payne, 94-1628 (La.App. 3d Cir.12/06/95), 665 So.2d 158, and cases cited therein. See also, State v. Johnson, supra. In this case, the state produced independent proof of Jetton's prior convictions including the original bills of information and certified copies of the minutes in docket nos. 77,400 and 87,789. The state also introduced a certified copy of Jetton's fingerprint card obtained from the sheriff's office. Expert fingerprint comparison testimony identified Jetton's fingerprints as the same fingerprints taken from the defendant in docket nos. 77,400 and 87,789. This proof was submitted prior to Jetton's choice to take the stand.
Because this independent, competent evidence, presented prior to Jetton's testimony, is sufficient to establish the defendant's prior convictions, we find that any error in the failure to inform defendant of his right to remain silent is harmless. Under these facts, we decline to nullify the habitual offender adjudication.
We therefore affirm Jetton's second-felony habitual offender adjudication.

Excessive Sentence
In assignment of error number seven, Jetton argues that the sentences imposed by the trial court were excessive. Because his motion to reconsider sentence only raised an excessive sentence claim, Jetton is relegated to a claim of constitutional excessiveness on appeal. LSA-C.Cr.P. art. 881.1; State v. Mims, 619 So.2d 1059 (La.1993).
Jetton argues that the trial court should have considered his cooperation with police, youthful age and insignificant economic loss to the victims. Jetton also argues that the trial court erred in ordering his sentences to be served consecutively with a previous five-year sentence.
We first note that after considering a presentence investigation report, the trial court clearly articulated its consideration of Jetton's youth and cooperation with police.
Moreover, the record shows that the trial court sentenced Jetton to the minimum *1217 mandatory sentence of six years under LSA-R.S. 14:62; LSA-R.S. 15:529.1.
The definition of criminal conduct and the provisions of penalties for such conduct is a purely legislative function. State v. Carlos Johnson, 31,448 (La. App.2d Cir.03/31/99), 747 So.2d 61, writ denied, 99-1689 (La.11/12/99), 749 So.2d 653. Pursuant to this function, the legislature enacted the habitual offender statute which has been held, on numerous occasions, to be constitutional. State v. Walter Johnson, 97-1906 (La.03/04/98), 709 So.2d 672. Since that statute in its entirety is constitutional, the minimum sentences it imposes on recidivists are presumed constitutional. Id.
Although a punishment required by statute may constitute excessive punishment, the appellate courts of this state have recognized that declaring a sentence under the Habitual Offender Law constitutionally excessive should be a rare act, not a commonplace practice. State v. Dorthey, 623 So.2d 1276 (La.1993).
In order to successfully rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Carlos Johnson, supra. Additionally, in determining whether a defendant has met this burden, the trial judge must consider that the goals of the Habitual Offender Law are to deter and punish recidivism. Id. Finally, it must be emphasized that the departure downward from the minimum sentence prescribed under the Habitual Offender Law should occur only in rare instances. Id.
After close scrutiny of the record before us, we cannot find that Jetton's remaining claim regarding the victims' minimal economic loss is adequate to show that he is the "exceptional" defendant for whom downward departure from the mandatory statutory minimum sentence is required. Jetton's commission of the present offenses while on probation reveals his obvious lack of response to previous probationary treatment.
Finally, considering that the present offenses were unrelated to his previous conviction, and the wide discretion granted to the trial court in ordering consecutive sentences under those circumstances, we find no error in the trial court's imposition of consecutive sentences. LSA-C.Cr.P. art. 883; State v. Maxi, 30,877 (La.App.2d Cir.08/19/98), 719 So.2d 104. The sentences are not excessive.
Accordingly, we affirm Jetton's sentences.

Error Patent
The trial court's imposition of a fine on these convictions is without authority; the trial court must impose the sentences authorized by LSA-R.S. 15:529.1. This statute does not authorize the imposition of a fine. State v. Dickerson, 584 So.2d 1140 (La.1991). Accordingly, we also delete the fine provision of Jetton's sentences.[3]

CONCLUSION
For the foregoing reasons, we affirm Jetton's convictions and sentences, but delete each of the $1,000 fines imposed. We also affirm Jetton's second-felony habitual offender adjudication.
*1218 CONVICTIONS AND SENTENCES AFFIRMED; FINE DELETED. HABITUAL OFFENDER ADJUDICATION AFFIRMED.
KOSTELKA, J., dissents in part and concurs in part with written reasons.
KOSTELKA, J., dissenting in part and concurring in part.
Believing the evidence insufficient to prove guilt as a principal to counts one and two, I must respectfully dissent while concurring in all other aspects of this opinion.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, PEATROSS, and KOSTELKA, JJ.
Rehearing denied.
KOSTELKA, J., would grant rehearing.
NOTES
[1] We note that there is no prejudice in the failure of the state to charge Jetton as a principal under LSA-R.S. 14:24. See State v. Peterson, 290 So.2d 307 (La.1974).
[2] Skaggs' trial testimony denied Jetton's involvement in these offenses. Because the state only sought to impeach Skaggs with his prior statement, which implicated Jetton in the Tillman burglaries, that statement is usable only for impeachment purposes and not as substantive evidence of Jetton's guilt. State v. Cousin, 96-2973 (La.04/14/98), 710 So.2d 1065.
[3] The trial court also failed to order that Jetton's sentence be served without benefit of probation or suspension of sentence in accordance with LSA-R.S. 15:529.1(G). Because the state has failed to appeal this illegally lenient sentence, however, we may not correct it or remand for re-sentencing. State v. Fraser, 484 So.2d 122 (La.1986).