962 So.2d 1220 (2007)
STATE of Louisiana, Appellee
v.
Carlton BROOKS, Appellant.
No. 42,226-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
*1221 Angela M. Smith, for Appellant.
Paul J. Carmouche, District Attorney, Dale G. Cox, Scott Chafin, Jr., Assistant District Attorneys, for Appellee.
Before WILLIAMS, PEATROSS and LOLLEY, JJ.
WILLIAMS, Judge.
The defendant, Carlton Brooks, was charged by grand jury indictment with two counts of second degree murder, violations of LSA-R.S. 14:30.1. After a jury trial, the defendant was found guilty as charged. The defendant's motion for post-verdict judgment of acquittal or modification of verdict was denied. The district court imposed the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for each count, with the sentences to run concurrently. The defendant appeals his convictions. For the following reasons, we affirm.

FACTS
On October 10, 2002, during a pep rally at Woodlawn High School ("Woodlawn"), there was an exchange of threats between members of two gangs, one from the Hollywood Heights area of Shreveport and the other from the Cedar Grove area. Those involved were removed from the rally by school officials.
The following Monday, October 14, 2002, a fight broke out between members of the two gangs at Woodlawn as the school day ended. The defendant, a Woodlawn student associated with the Cedar Grove gang, was seen among a group that was chased away from the school campus by the assistant principal. Then multiple gunshots were fired from a vehicle driving past the school and a student, Phillip Guiden, was shot in the leg. Marquell Chambers was later identified as the shooter and arrested.
Later that afternoon, the defendant and some other individuals from the Cedar Grove area, including Courtney Beaner, Phillip Brown, Aaron Wallpool and Jemarcus Monroe, were gathered outside Wallpool's home located at Wallace and West 76th Street. When a Lincoln automobile containing some of the Hollywood group, including Tony Taylor and Jermichael Lewis, drove past there was an exchange of gunfire between the vehicle occupants and the group standing in front of the West 76th Street house. No one was injured in the shooting.
At approximately 5:30 p.m. that evening, LaDonna Austin returned from work to the Lexington Street home she shared with her sister, LaDorothy Austin, who was there with the defendant, her live-in boyfriend. Also present were Phillip Brown, Beaner, Wallpool, Shamichael Tillman, Arethea Brown (Phillip's brother) and Monroe. Defendant and the others were heard discussing the fight at Woodlawn and making a plan to retaliate against Randy Wilson, who they said was a member of the Hollywood group which had fired shots at them earlier at West 76th Street. Some of the group dressed in *1222 black clothing and drove away in a white Honda vehicle.
At approximately 9:00 p.m., Ronnie Chambers drove to a house located at the corner of Oakdale and Ledbetter Streets in Shreveport to pick up his 15-year-old sister, Chiquita Chambers. Their brother Marquell had been arrested earlier for the shooting at Woodlawn. Members of the Hollywood group typically gathered at the house, which was approximately one block away from Hattie Perry Park. At the time, several individuals were standing in the yard, including Randy Wilson and Jermichael Lewis.
A short time later, a white Honda sedan with a sunroof and tinted windows drove by the house. Chiquita was standing in the street behind Ronnie's car when occupants of the Honda began firing numerous shots from the sunroof and rear windows of the car toward those gathered in the yard. Chiquita and Lewis both suffered fatal gunshot wounds and Randy Wilson was shot in the left arm.
Police later recovered the white Honda sedan, which had been stolen the night before the shooting and burned afterward. After interviewing a number of witnesses who named defendant as the driver of the vehicle used in the drive-by shooting, police sought to contact him at the Lexington Street house. Defendant was apprehended while attempting to escape out of a back window of the residence and taken into custody. After a search of the home, police seized ammunition, a Lorcin .380 caliber semiautomatic pistol and a Bryco .380 semiautomatic pistol that were found in the bedroom shared by LaDorothy and the defendant.
The crime scene investigation yielded numerous .380 and .40 caliber shell casings. Richard Beighley, a firearms expert with the Northwest Louisiana Criminalistics Laboratory, tested the bullets recovered from the bodies of the victims and bullets fired from the two handguns seized from the Lexington Street home. Beighley concluded that the bullet recovered from Chiquita's body was fired from the Bryco .380 and determined that five of the .380 caliber casings recovered from the crime scene were fired from the .380 Lorcin pistol. Beighley further concluded that the bullet recovered from Lewis' body was fired by a .40 caliber semiautomatic pistol, as were six .40 caliber shell casings found at the scene.
Subsequently, the defendant was charged with two counts of second degree murder. A jury found defendant guilty as charged. The district court imposed concurrent life sentences at hard labor without benefit of parole, probation or suspension of sentence. Defendant appeals.

DISCUSSION
The defendant contends the evidence was insufficient to support the convictions of second degree murder. Defendant argues that the jury verdict should be reversed because the state failed to prove that he was the driver at the time of the shooting, that he planned the attack or that he was aware the participants intended to carry out their retaliation with weapons.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate *1223 court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La. App. 2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048. An accomplice is a competent witness to testify against his co-perpetrator even if the prosecution offers him inducements to testify; those inducements only affect the witness's credibility. State v. Jetton, 32,893 (La.App. 2d Cir.4/5/00), 756 So.2d 1206, writ denied, XXXX-XXXX (La.3/16/01), 787 So.2d 299. The credibility evaluation of an accomplice's testimony is within the province of the trier of fact. Id.
Second degree murder is the killing of a human being (1) when the offender has a specific intent to kill or to inflict great bodily harm; or (2) when the offender is engaged in the "perpetration or attempted perpetration of . . . [a] drive-by shooting . . ., even though he has no intent to kill or to inflict great bodily harm." LSA-R.S. 14:30.1. A "drive-by shooting" means the discharge of a firearm from a motor vehicle on a public street or highway with the intent either to kill, cause harm to, or frighten another person. LSA-R.S. 14:37.1; State v. Gipson, 28,113 (La.App. 2d Cir.6/26/96), 677 So.2d 544, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402.
LSA-R.S. 14:24 regarding principals provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Under the doctrine of transferred intent, when a person shoots at an intended victim with the specific intent to kill or inflict great bodily harm and accidentally kills or inflicts great bodily harm upon another person, if the killing or infliction of great bodily harm would have been *1224 unlawful against the intended victim, then it would be unlawful against the person actually shot even though that person was not the intended victim. State v. Gilliam, supra. A person may be convicted of an offense even if he has not personally fired the fatal shot. The law of principals states that all persons involved in the commission of a crime are equally culpable. A principal may be connected to those crimes for which he has the requisite mental state. State v. Gilliam, supra.
In the present case, the state presented the testimony of Jemarcus Monroe, who was an occupant of the car during the drive-by shooting. Monroe testified that on October 14, 2002, he went to the house on Lexington Avenue, where he heard defendant talking with Phillip Brown and Courtney Beaner about retaliating against those who had shot at them earlier on West 76th Street. Monroe stated that defendant had driven a white Honda to the house and that the group left in that car. Monroe testified that defendant was driving and Brown sat in the front passenger seat. Monroe stated that he sat in the back seat along with Marlon Washington, Tillman, who was behind the driver, and Beaner, who sat in the rear passenger side. Monroe testified that Brown, Tillman and Beaner were all armed with handguns and that he observed those three shoot their guns as the defendant drove past the group of people standing on the corner of Oakdale and Ledbetter. Monroe specifically stated that Brown fired his gun from the sunroof and that Tillman and Beaner fired shots from the rear passenger windows. According to Monroe, the defendant drove the group back to the Lexington Street house and then defendant and Tillman left in the Honda.
LaDorothy Austin testified that on October 14, 2002, she resided with her sister at the house on Lexington Avenue and that defendant was her boyfriend at the time. She stated that defendant was at the house that night with Brown, Tillman and Beaner. LaDorothy testified that defendant and the others were mad about the shooting at West 76th Street and wanted revenge. LaDorothy stated that defendant and the others left in a white car, but returned because their first drive-by attempt had been deterred by the presence of police at Hattie Perry Park. She testified that defendant was driving the Honda when the group left the second time, but that Tillman was driving the Honda when they returned. LaDorothy stated that after watching the news on television that night, the men said that the person they meant to kill was Wilson, not the girl. LaDorothy acknowledged that she had lied to police in her previous statement when she said defendant did not go with the others. However, she testified she was telling the truth in court.
LaDonna Austin testified that on the night of the shooting she heard defendant talk with Brown and Beaner about retaliating against those who had shot at them earlier, that they changed into black clothing and left the Lexington Street house in a white vehicle. LaDonna stated that when the group returned they told her they had done a drive-by shooting.
Tony Taylor testified that on October 14, 2002, he was present at the house located on the corner of Oakdale and Ledbetter. Taylor stated that he was standing in the yard by the gate when a white car drove past and the occupants started shooting. Taylor identified the defendant as the driver of the white vehicle, which passed directly in front of the gate where he was standing. Taylor testified that he had known defendant for approximately seven years and that he observed defendant's face in the car window.
*1225 Contrary to defendant's contentions, the witness testimony demonstrated that defendant participated in the discussion and planning of the retaliatory drive-by shooting. In addition, several witnesses identified defendant as the driver of the vehicle from which other occupants fired handguns into a crowd with the intent to kill or harm another person. Thus, the evidence adduced, viewed in the light most favorable to the prosecution, was sufficient for a reasonable trier of fact to conclude that the defendant was guilty of second degree murder as a principal in a drive-by shooting that resulted in the death of the two victims.
Moreover, the jury could reasonably have found that defendant possessed the requisite knowledge and criminal intent to establish his culpability as a principal who aided and abetted the commission of the murders. Consequently, we conclude that the evidence presented was sufficient to support the defendant's convictions of second degree murder. The assignment of error lacks merit.
We have reviewed the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.