836 So.2d 1235 (2003)
STATE of Louisiana, Appellee,
v.
Melvin THORNTON, Appellant.
No. 36,757-KA.
Court of Appeal of Louisiana, Second Circuit.
January 29, 2003.
*1237 Louisiana Appellate Project, by J. Wilson Rambo, Paula C. Marx, Lafayette, for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, Clifford R. Strider, III, Assistant District Attorney, for Appellee.
Before PEATROSS, KOSTELKA and HARRISON (Pro Tempore), JJ.
KOSTELKA, J.
Melvin Thornton ("Thornton") was convicted as charged of second degree murder, La. R.S. 14:30.1, and was sentenced to mandatory life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. He now appeals his conviction and sentence. We affirm.

FACTS
During the late evening hours of April 10, 1999, the Ruston, Louisiana Police Department received a report that a gunshot *1238 was heard in a particular neighborhood. Officer Travis Sullivan ("Sullivan") arrived at the scene and spoke to an adult male who reported hearing a single gunshot followed by the sound of a vehicle accelerating and crashing. Sullivan located a pickup truck on a nearby street which had apparently hit a mailbox and a parked vehicle before coming to a stop. Sullivan approached the truck and saw the body of a white male, later identified as Frank Dunaway ("Dunaway"), bleeding profusely from a gunshot wound to the back of his head. He had been shot once in the face at close range under the left eye with the bullet exiting the back of his head. An emergency vehicle took Dunaway to Lincoln General Hospital where he was pronounced dead.
The next evening, after nineteen-year-old Rodney Caldwell, Jr. ("Caldwell") identified Thornton as Dunaway's shooter, police began looking for Thornton. On April 12, 1999, the police received an anonymous tip that Thornton was hiding at his aunt's residence where he was later arrested. In a statement to police, Thornton denied any involvement in the shooting.

DISCUSSION

Sufficiency of the Evidence
First, it is appropriate that we address Thornton's sufficiency of the evidence complaint. State v. Hearold, 603 So.2d 731 (La.1992). The question of sufficiency of the evidence is properly raised by motion for post-verdict judgment of acquittal. La.C.Cr.P. art. 821; State v. Gay, 29,434 (La.App.2d Cir.06/18/97), 697 So.2d 642. The record shows that Thornton raised the issue of sufficiency of the evidence in the trial court in a joint motion for post-verdict judgment of acquittal and new trial. Accordingly, he has properly preserved the issue for appellate review.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency-of-evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, and does not extend to credibility determinations made by the trier of fact. State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
In pertinent part, second degree murder is the killing of a human being when the offender has a specific intent to kill or *1239 inflict great bodily harm or is engaged in the perpetration or attempted perpetration of an armed robbery. La. R.S. 14:30.1.
On appeal, Thornton argues that the state failed to exclude the reasonable hypothesis that Caldwell killed Dunaway. Specifically, Thornton argues that the witnesses' testimony, including that of Caldwell, implicating him as the perpetrator of the murder, was not believable.
This evidence included Caldwell's testimony that he witnessed Thornton shoot Dunaway while trying to rob him. Caldwell and Thornton had obtained a ride with Dunaway at John's Texaco station where they had gone to purchase beer. Caldwell testified that as he exited the back of the truck, he saw Thornton holding a gun in Dunaway's face while telling him to "give it up," and then Caldwell heard a shot.
Rodriguez Brantley ("Brantley") testified that he met Thornton while in jail and that Thornton confessed the entire crime to him. Brantley informed the jail warden. Brantley testified that Thornton told him that he shot Dunaway with a .38 handgun he stole from his grandfather. Vernon Kelson ("Kelson") also testified against Thornton and stated that while he was in jail, Thornton confessed the murder to him. Kelson stated that Thornton drew three maps outlining the crime scene and his involvement in it. Kelson presented the maps to the jail warden.
Michael Stelly, an expert in fingerprint identification, identified Thornton's fingerprints on the maps.
The remaining evidence included the testimony of Thornton's grandmother who testified that her husband reported his .38 pistol stolen. Officer Gerald Jenkins confirmed that such a report occurred on April 10, 1999. Additionally, Thornton's aunt, Lynetta Banks, contradicted Thornton's claim that he remained at her house the entire evening of the crime; she testified that Thornton was in and out of the house on that evening and that the last time she saw him he was playing a video game around midnight.
When viewed in the light most favorable to the state, we find this evidence sufficient to support Thornton's second degree murder conviction. The jury heard and evaluated Caldwell's testimony, including any inconsistencies contained therein. Obviously, the jury accepted that testimony as credible. We decline to disturb this determination. Certainly, if believed, Caldwell's eyewitness account of the shooting is alone sufficient to show that Thornton shot Dunaway during the perpetration of an armed robbery. Moreover, the jury could also have believed both Brantley's and Kelson's testimony that Thornton confessed the crime to them. If accepted, this testimony not only corroborates Caldwell's version of the events, but, when coupled with it, is more than adequate to support the conviction and exclude every other reasonable hypothesis of innocence. Accordingly, we can find no merit to this assignment of error.

Batson Challenge
Thornton has also raised a claim relating to the systematic exclusion of African-American jurors in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The Batson holding is codified in our law as La.C.Cr.P. art. 795(C), which provides:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the *1240 court is satisfied that such reason is apparent from voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
To make a Batson claim against the state, the defendant must first establish a prima facie case that the state exercised its peremptory challenges to exclude members of the jury venire solely on the basis of their cognizable race. Batson, supra; State v. Green, 94-0887 (La.05/22/95), 655 So.2d 272. The state need not give an explanation for its use of a peremptory challenge if the trial court does not find that the defense has made a prima facie case, but many trial courts require this to create a complete record. State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992).
Once a defendant establishes a prima facie case, the burden then shifts to the state to come forward with a race-neutral explanation. This second step of the process does not demand an explanation from the state that is persuasive, or even plausible. The reason offered by the state will be deemed race-neutral unless a discriminatory intent is inherent within that explanation. The persuasiveness of the state's explanation only becomes relevant at the third and final step which is when the trial court must decide whether defendants have proven purposeful discrimination. Thus, the ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory challenge. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
On appellate review, this court must analyze whether the reasons were race-neutral and whether the trial court properly assessed the weight and credibility of each explanation. State v. Mamon, 26,337 (La.App.2d Cir.12/16/94), 648 So.2d 1347, writ denied, 95-0220 (La.06/02/95), 654 So.2d 1104.
In this case, after the completion of the jury selection, Thornton urged a Batson challenge. At that time, the state had exercised four peremptory challenges against African-Americans and three against Caucasians. In denying the merits of Thornton's Batson challenge, the trial court reviewed all of the peremptory challenges and noted that of the seven strikes, four were against African-Americans. He noted that because two members of the total jury composition were African-American, the overall composition of the jury did not have a disparate impact upon the racial class. Based upon this evaluation, the court ultimately determined that Thornton failed to make out a prima facie case that the state had utilized its peremptory challenges to exclude members based upon their cognizable race. Nevertheless, the court also reviewed the testimony of three of the four, and determined that their testimony revealed race-neutral grounds for their elimination as jurors. One of the jurors was Thornton's attorney's neighbor. Of course, knowledge of the parties is a sufficient race-neutral reason for a peremptory challenge of a juror. State v. Tilley, 99-0569 (La.07/06/00), 767 So.2d 6, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001). The second juror indicated that he may not be able to vote guilty even if the state proved a motive. This, too, is a valid race-neutral ground to exercise a peremptory challenge against a juror. Mamon, supra. The third juror's nephew had been the victim of a crime and she became very emotional when discussing those events. Concerns about the emotional state of a potential juror relating to experiences with *1241 criminal victimization is a valid reason for a peremptory challenge.
Additionally, the state chose to proffer its reasons for striking the African-Americans. In addition to the above-noted individuals, the state presented evidence regarding the last stricken person, a black male known to the prosecutor because he had recently served on another jury. The prosecutor described how, after that trial, the man came back to watch another trial. During a break in those proceedings, the man approached the prosecutor and wanted to know why they were prosecuting that defendant since it was apparent that he was innocent. The prosecutor explained that it exercised a peremptory challenge against this individual in this case due to the fear that the man might make up his mind before hearing all of the evidence. Previous association with a district attorney can also be a valid ground for a peremptory strike. Mamon, supra. Moreover, the prosecutor's belief, based upon previous experience with the individual, that the person would make up his mind before hearing all of the evidence is a valid race-neutral ground for the exercise of a peremptory challenge.
After reviewing the grounds provided for the exercise of the state's peremptory challenges regarding these African-American individuals, we find them sufficiently race-neutral. Therefore, this assignment lacks merit.

Mistrial
Prior to trial, one of the jurors observed Thornton being escorted by Deputy James Duggan ("Duggan") in leg irons, shackles and handcuffs when the elevator door opened. Thornton's counsel informed the court of the situation and requested a mistrial. The court allowed Duggan to be questioned as to whether the juror saw Thornton in shackles and handcuffs. Duggan stated that Thornton stood in the middle of the elevator while he stood to the front side of him. When the elevator door opened, the juror was standing outside. Duggan testified that he did not know what the juror saw, but he did make eye contact with Duggan.
Both Thornton's counsel and the state agreed that the trial court should question the juror regarding what he saw. After doing so off the record, the court reported that the juror did see Thornton in handcuffs and that he mentioned it to another juror. Nevertheless, the juror reported that he could remain fair and impartial despite what he observed. Accordingly, the trial court denied Thornton's motion for mistrial. On appeal, Thornton argues that the denial of the motion was erroneous. We cannot agree.
Absent exceptional circumstances, a defendant before the court should not be shackled, handcuffed, or garbed in any manner destructive to the presumption of innocence or detrimental to the dignity and impartiality of the judicial proceedings. State v. Stephens, 412 So.2d 1057 (La.1982); State v. Plater, 26,252 (La. App.2d Cir.09/21/94), 643 So.2d 313, writ denied, 94-2608 (La.02/03/95), 649 So.2d 402. For a finding of reversible error, the record must show an abuse of the trial court's reasonable discretion resulting in a clear prejudice to the accused. Plater, supra. The momentary use of restraints for the limited purpose of transporting the accused does not mandate a mistrial even when a juror sees a defendant being transported on two occasions. State v. Jones, 31,613 (La.App.2d Cir.04/01/99), 733 So.2d 127, writ denied, 99-1185 (La.10/01/99), 748 So.2d 434.
In this case, the record shows that the juror momentarily observed Thornton being transported to the courtroom for trial and mentioned it to another juror. The jurisprudence is clear that such an observation under these circumstances does not *1242 mandate a mistrial. Nor has Thornton otherwise demonstrated clear prejudice as the result of this incident. When questioned, the juror was able to assure the court that he could remain impartial in rendering a verdict. Thornton presented no evidence contradicting that claim. Accordingly, we can discern no error in the denial of Thornton's mistrial request.

Excessive Sentence
In his final argument, Thornton contends that the sentence imposed is excessive. He also requests that we remand for resentencing in compliance with La. C.Cr.P. art. 894.1.
The record shows that Thornton failed to file a motion to reconsider sentence in accordance with La.C.Cr.P. art. 881.1. Accordingly, he is precluded from complaining of inadequate La. C.Cr.P. art. 894.1 compliance on appeal and is limited to review of the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993).
In this case, the life sentence without benefit of parole, probation or suspension of sentence is mandatory for the crime of second degree murder and needs no justification. State v. Koon, 31,177 (La.App.2d Cir.02/24/99), 730 So.2d 503.
In State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672, in the context of habitual offender sentencing, the supreme court stated:
[T]o rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
It is the legislature's prerogative to determine the length of a sentence imposed for the crimes classified as felonies, and the courts are charged with applying those punishments unless they are found to be unconstitutional. State v. Armstrong, 32,279 (La.App.2d Cir.09/22/99), 743 So.2d 284, writ denied, 99-3151 (La.04/07/00), 759 So.2d 92. Moreover, this court has afforded great deference to the Legislature's determination of an appropriate minimum sentence. State v. Ruffins, 32,870 (La.App.2d Cir.12/10/99), 748 So.2d 614.
Thornton's argument that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment contained in the Louisiana Constitution has been repeatedly rejected. State v. Parker, 416 So.2d 545 (La.1982); State v. Brooks, 350 So.2d 1174 (La.1977); Ruffins, supra; Armstrong, supra; State v. Hereford, 518 So.2d 515 (La. App. 3d Cir.1987).
Nor has Thornton sufficiently demonstrated he is the "exceptional" defendant for which downward departure from the statutory minimum sentence is required. Thornton intentionally shot the victim at very close range while perpetrating an armed robbery. As was aptly stated by the trial court, this crime can be characterized as nothing short of a cold-blooded killing motivated by greed. When compared with the severity of the offense, the imposed sentence is neither grossly disproportionate nor shocking to the sense of justice. Accordingly, we cannot find the trial court's refusal to depart from the mandatory sentencing provisions to be reversible error.

CONCLUSION
For the foregoing reasons, Thornton's conviction and sentence are affirmed.
*1243 CONVICTION AND SENTENCE AFFIRMED.