895 So.2d 1 (2004)
STATE of Louisiana, Appellee,
v.
Lionel BONNER, Appellant.
No. 39,187-KA.
Court of Appeal of Louisiana, Second Circuit.
December 22, 2004.
*3 Louis G. Scott, Louisiana Appellate Project, Kenota Pulliam Johnson, for Appellant.
Jerry L. Jones, District Attorney, Charles L. Brumfield, Assistant District Attorney, for Appellee.
Before BROWN, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the Fourth Judicial District Court, Parish of Morehouse, State of Louisiana. Lionel Bonner was tried by jury and convicted as charged of second degree murder. La. R.S. 14:30.1. Bonner was sentenced to life imprisonment without benefits, and he now appeals. For the following reasons, the defendant's conviction and sentence are affirmed.

FACTS
On September 2, 1997, the owner of Westside Cab Company contacted the Bastrop Police Department and reported that cab driver Bobby Watson had not returned with his cab on September 1st. Watson's last contact with the cab dispatcher was that he was taking a passenger from the One Stop liquor store in Bastrop to Mer Rouge at about 10:30 on the evening of September 1st.[1] The dispatcher recognized the voice of the person who called from One Stop as belonging to Michael Hobbs, a/k/a Michael Lewis ("Hobbs"), because he had known Hobbs for several years.
The next day, an abandoned vehicle was located in Bastrop. It was identified as belonging to Westside Cab Company and as the cab driven by Watson. The cab had one flat tire, and the .25 caliber pistol that Watson kept in the glove box of the cab was missing. There were no keys in the ignition. The contents of Watson's wallet were scattered on the ground within a quarter of a mile from the cab near some railroad tracks.
Later, on September 16, 1997, a body was discovered in a cotton field outside of Mer Rouge. Some loose change and a broken wrist watch were found on the ground near the body. Dental records were used to positively identity the body as that of Watson. A subsequent autopsy revealed that Watson died of multiple fractures from repeated blows to the head with a blunt object (cranial cerebral trauma secondary to blunt force trauma).
The investigation revealed that a fingerprint on one of the papers found near the cab matched Hobbs'. Also, it was discovered that the pawn ticket found near the cab was for Watson's pistol, which had been pawned by Hobbs. Thereafter, Hobbs and the defendant, Lionel Bonner, were developed as suspects in Watson's murder. A search warrant was executed at Hobbs' residence, where two .25-caliber cartridges (consistent with Watson's pistol) were recovered.
Initially, Hobbs made a statement to police explaining how he obtained Watson's gun and pawned it. He admitted *4 nothing about the murder. Later, on September 21, 1997, Hobbs gave another voluntary statement to investigators implicating Bonner. He also testified at Bonner's trial, where he related that on the night of the crime, he met Bonner on the block near the One Stop. According to Hobbs, he agreed to help Bonner rob Watson. He stated that Bonner made the phone call for the cab, and when Watson arrived, Bonner asked him to drive them to Mer Rouge. Hobbs related that when Bonner directed Watson to drive down a road and turn around, Bonner, who was sitting in the backseat behind Watson, began to choke the victim. Hobbs was sitting in the front passenger seat of the cab, and Bonner told him to get Watson's money. Hobbs testified that he watched in "shock" while Bonner dragged Watson out of the cab into a cotton field and killed Watson by beating him with an "X"-shaped tire tool. Hobbs said Bonner threw the tire tool in the field across the road from where the body was left.
Hobbs stated that Bonner then drove the cab back to Bastrop, where the two abandoned it. According to Hobbs, Bonner took the keys with him and handed Hobbs some papers from Watson's wallet, which fell on the ground on some nearby railroad tracks. Hobbs related that he and Bonner did not find any money from Watson's car or wallet. Hobbs stated that he and Bonner went back up to the block near the One Stop, where he bought Watson's pistol from Bonner for an exchange of drugs. At Hobbs' residence, Bonner allegedly changed into some of Hobbs' shoes.
Hobbs testified regarding further events following the crime, including that he and Bonner rode with Turner Robinson to Mer Rouge at about 6:30 on the morning after the crime. Hobbs and Bonner went to Ruth Hobbs' home in Mer Rouge. Ruth then gave both men a ride to various locations. Hobbs admitted that he pawned Watson's pistol.[2] Approximately 20 days after the crime, investigators retrieved the tire tool from the location described by Hobbs. The tool contained no blood evidence or fingerprints.
On or about October 2, 1997, Bonner was originally charged by bill of indictment with the first degree murder of Watson. By an amended bill of information, Bonner was later charged with second degree murder.
Bonner was tried by a jury. Hobbs, who pled guilty to simple robbery and was sentenced to a six-year prison sentence, testified at trial against Bonner. The state's evidence also included the testimony of the investigating officers, the cab dispatcher, Watson's previous cab passenger, and other witnesses. The defense also presented witnesses and evidence. At the trial's conclusion, Bonner was convicted as charged of second degree murder and was sentenced to life imprisonment without benefits. This appeal ensued.

DISCUSSION
On appeal, Bonner maintains that the jury verdict convicting him of second degree murder failed to meet the legal standard of sufficiency of the evidence. Specifically, Bonner maintains that the state failed to meet its burden of proving his identity as the perpetrator.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the *5 light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.02/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.09/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.04/19/02), 813 So.2d 424. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La. 10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.02/05/99), 737 So.2d 747.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.04/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.02/21/97), 688 So.2d 520.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
A jury may convict upon a co-defendant's uncorroborated testimony. State v. Matthews, 450 So.2d 644, 647 (La.1984); State v. Jetton, 32,893 (La.App.2d Cir.04/05/00), 756 So.2d 1206, writ denied, XXXX-XXXX (La.03/16/01), 787 So.2d 299. An accomplice is a competent witness to testify against his co-perpetrator even if the prosecution offers him inducements to testify; those inducements only affect the witness's credibility. State v. Jetton, supra, and cases cited therein. The credibility of a co-defendant's testimony is not within the province of the court of appeal to decide. Id. Rather, credibility evaluations are well within the province of the trier of fact. Id.
In this case, Bonner contends that the state relied on Hobbs' "questionable and suspect" testimony to prove that Bonner committed the offense. He asserts that Hobbs' testimony should not have been considered credible because he gained a lesser charge and sentence in exchange for testifying against the defendant. The defense further notes that all physical evidence pointed to Hobbs as the perpetrator  the pistol was pawned by him, his fingerprint was found on the victim's papers, and (despite his version of events) his voice was identified as the person who called the cab to the One Stop. Moreover, the defense argues that no physical evidence linked Bonner to this crime. All of these are strong arguments.
*6 However, evidence existed that Bonner and Hobbs were together the morning after the murder. Also, the jury heard Hobbs' testimony, including his cross-examination, and chose to convict Bonner of Watson's murder  for the most part on the sole evidence of Hobbs' testimony. As noted, a jury may convict upon a co-defendant's uncorroborated testimony. State v. Matthews, supra; State v. Jetton, supra. Although we acknowledge the legitimate arguments raised by Bonner on appeal, as the reviewing court it is not our role to re-evaluate the credibility of witnesses who testify at trial. Furthermore, the inducements offered to Hobbs to testify only affected his credibility. See State v. Jetton, supra.[3] This credibility evaluation was well within the province of the trier of fact, and should not be disturbed on appeal. See State ex rel. K.G., 34,535 (La. App. 2d Cir. 01/24/01), 778 So.2d 716. Accordingly, we conclude that this assignment is without merit.

Statements by the State
In another assignment of error, Bonner argues that the trial court erred in failing to admonish the jury following prejudicial statements made by the state, which statements tainted the jury and contributed to his conviction. In brief, Bonner further argues, alternatively, that the trial court erred in failing to grant the request for mistrial. For the following reasons, we conclude this assignment is without merit.
In the opening statement given by defense counsel, it was noted that Hobbs waited from 1997 to 2001 before writing the district attorney a note proposing to say whatever he needed to say to get his charges reduced. In response, the prosecutor noted in his closing argument the evidence corroborating Hobbs' statement and testimony. The prosecutor continued:
Michael Hobbs was repeatedly asked on cross why did you wait until 2001 to come forward? Well tell me ladies and gentlemen, when did, when did Lionel Bonner come forward? Where's evidence of that?
The defense counsel objected to the statement, which objection was sustained by the trial court. An admonition was not requested, but a motion for mistrial was made, which was denied.
In his rebuttal argument, the prosecutor continued, "... Just a coincidence that neither of these men reported the crime. There's no longer a string of coincidental occurrences." The defense objected to the statements which objection was overruled, and moved for a mistrial  again denied. At the trial, the trial court considered argument by both sides on the issue, and concluded that the statements were not a reference to Bonner's failure to take the stand and testify at trial.
Said statements were also the basis for Bonner's motion for new trial, which was also denied. In its written ruling on the motion, the trial court reiterated its reasoning and conclusion related to the prosecutor's comments. That is, the trial court stated that the allegedly improper remark made by the prosecutor did not make reference to the failure of Bonner to testify in his own defense, which would mandate the *7 granting of a mistrial. Rather, the offending remark referred to the factual circumstances that neither Hobbs nor Bonner ever said anything to the police about the homicide from the date of its commission up until the time that Hobbs contacted the district attorney's office. The trial court concluded that the prosecutor's comments were fair and legitimate comments made in response to questions raised by the defense in opening statement and closing argument. It further stated that the prosecutor's remarks were not a reference, direct or indirect, to Bonner's failure to testify in his own defense.
A mistrial may be granted for references made to a defendant's failure to testify under two separate criminal code articles. Louisiana C. Cr. P. art. 770 provides for a mandatory mistrial in certain instances, and states:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(3) The failure of the defendant to testify in his own defense;....
(Emphasis added).
Thus, upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the district attorney, during the trial or in argument, refers directly or indirectly to the failure of the defendant to testify in his own defense. La. C. Cr. P. art. 770(3). Said code article protects the defendant's Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. State v. Mitchell, XXXX-XXXX (La.02/21/01), 779 So.2d 698; State v. Taylor, 37,356 (La.App.2d Cir.09/26/03), 855 So.2d 958, writ denied, XXXX-XXXX (La.03/19/04), 869 So.2d 848.
Louisiana Code of Criminal Procedure 770(3) prohibits both direct and indirect references to the defendant's failure to testify. Even without these statutory prohibitions, the United States Supreme Court has held that a prosecutor is not free to comment upon a defendant's failure to take the stand since such a comment violates the self-incrimination clause of the Fifth Amendment made applicable to the states through the Fourteenth Amendment. Griffin v. California, 380 U.S. 609, 612-13, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965)(emphasis added).
Additionally, when testing the permissibility of the statement and whether such was direct or indirect, the context of the statement is also crucial. Louisiana C. Cr. P. art. 770 (requiring a mandatory mistrial) only applies to statements referring to a defendant's failure to testify. State v. Smith, 336 So.2d 867 (La.1976). As used in art. 770, the word "testify" means to give testimony under oath at the trial. Id. at 868. Notably, the U.S. Supreme Court has discussed similar comments made by the prosecutor in reference to a defendant's failure to "take the stand." See, Griffin, supra. Here, the prosecutor walked a fine line when he referred to Bonner's failure to "come forward." However, said statement followed his reference to Hobbs' own action of coming forward to police during the crime's investigation in 2001. Clearly, he was contrasting the pre-trial actions of the two accomplices and their behavior during the investigation and not Bonner's failure to testify in his own defense at his trial.
The defense also looks to La. C. Cr. P. art. 771, regarding admonitions, which provides:

*8 In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. (Emphasis added).
Here, although Bonner argues on appeal that an admonition should have been made, such an objection was not made at the trial. Thus, Bonner is precluded from arguing this issue on appeal. La. C. Cr. P. art. 771; State v. Johnson, XXXX-XXXX (La.App. 4th Cir.05/17/00), 764 So.2d 1113, writs denied, 2000-2297 (La.11/17/00), 774 So.2d 973, XXXX-XXXX (La.06/29/01) 794 So.2d 822.
Furthermore, as to whether the trial court erred in failing to order a discretionary mistrial under this article, we note that a mistrial is a drastic remedy and, except in circumstances where a mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. State v. Robinson, 342 So.2d 183 (La.1977), citing, State v. Redfud, 325 So.2d 595 (La.1976); State v. Whitley, 296 So.2d 820 (La.1974); see also State v. Keys, 29,369 (La.App. 2nd Cir.05/07/97), 694 So.2d 1107, writs denied, 97-1387 (La.10/31/97), 703 So.2d 21, 97-1497 (La.10/31/97), 703 So.2d 21. The determination as to whether a mistrial should be granted under La. C. Cr. P. art. 771 lies within the sound discretion of the trial judge, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Ingram, 29,172 (La.App.2d Cir.01/24/97), 688 So.2d 657, writs denied, 97-0566 (La.09/05/97), 700 So.2d 505, 1998-2845 (La.03/26/99), 739 So.2d 785. Moreover, a conviction will not be reversed on the basis of allegedly prejudicial argument unless the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that the remarks contributed to the verdict. State v. Robertson, 02-0373 (La.App. 5th Cir.10/29/02), 831 So.2d 389.
In the case sub judice, we cannot say the trial court abused its discretion in denying Bonner's request for mistrial (either in the contemporaneous motion made at trial or in his motion for new trial). Primarily, as discussed before, we note the context in which the statement(s) were made. See State v. Duke, 358 So.2d 293 (La.1978). So considering, we accord credit to the good sense and fair-mindedness of the jurors who heard the evidence and the statement(s) in the context in which they were made. State v. Ingram, supra. There is no showing that the prosecutor's comments made it impossible for Bonner to obtain a fair trial and the trial judge was not clearly wrong in this determination. Considering a reading of the closing argument as a whole and the entirety of the record, the statement(s) do not appear so influential to the verdict as to require reversal, i.e., there is no indication *9 in the record that these particular comments influenced the jury or contributed to the verdict. Accordingly, we conclude that this assignment of error is without merit.

Excessive Sentence
In Bonner's final two assignments of error, he argues that (i) the trial court erred in failing to give sufficient consideration to mitigating factors in fashioning his sentence, and (ii) the sentence imposed is excessive. Specifically, Bonner argues these two assignments of error together because they are interrelated. He contends that the trial court failed to particularize the sentence to this offender and imposition of an excessive sentence has resulted. Further, he asserts that the record lacks justification for the sentence, concluding that the sentence is without justification and should be set aside. We disagree.
The defendant was convicted of second degree murder, a violation of La. R.S. 14:30.1. This statute imposes a mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. State v. Nash, 36,038 (La.App.2d Cir.06/14/02), 821 So.2d 678, writ denied, 2002-2527 (La.06/27/03), 847 So.2d 1254.
The record shows that Bonner failed to file a motion to reconsider sentence in accordance with La. C. Cr. P. art. 881.1. Accordingly, on appeal he is precluded from complaining of inadequate compliance with La. C. Cr. P. art. 894.1 and is limited to review of the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.02/25/98), 707 So.2d 164.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.
In this case, the life sentence without benefit of parole, probation or suspension of sentence is mandatory for the crime of second degree murder and needs no justification. State v. Thornton, 36,757 (La.App.2d Cir.01/29/03), 836 So.2d 1235, writ denied, XXXX-XXXX (La.10/31/03), 857 So.2d 474; State v. Koon, 31,177 (La.App.2d Cir.02/24/99), 730 So.2d 503.
In State v. Johnson, 97-1906 (La.03/04/98), 709 So.2d 672, in the context of habitual offender sentencing, the supreme court stated:
[T]o rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that: [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
It is the legislature's prerogative to determine the length of a sentence imposed for the crimes classified as felonies, and the courts are charged with applying those punishments unless they are found to be unconstitutional. State v. Thornton, supra, citing State v. Armstrong, 32,279 (La.App.2d Cir.09/22/99), 743 So.2d 284, writ *10 denied, XXXX-XXXX (La.04/07/00), 759 So.2d 92. Moreover, this court has afforded great deference to the legislature's determination of an appropriate minimum sentence. State v. Thornton, supra; State v. Ruffins, 32,870 (La.App.2d Cir.12/10/99), 748 So.2d 614.
Arguments that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment contained in the Louisiana constitution has been repeatedly rejected. State v. Parker, 416 So.2d 545 (La.1982); State v. Brooks, 350 So.2d 1174 (La.1977); State v. Thornton, supra.
In this case, Bonner has not sufficiently demonstrated he is the "exceptional" defendant for which downward departure from the statutory minimum sentence is required. The jury believed Hobbs' account that Bonner committed the planned robbery of the victim, choked and brutally beat him to death with a tire iron, and then left his body to decompose in a cotton field. He was accordingly convicted of second degree murder. When compared with the severity of the offense, the imposed sentence is neither grossly disproportionate nor shocking to the sense of justice. Accordingly, this court should not find the trial court's refusal to depart from the mandatory sentencing provisions to be reversible error. See State v. Thornton, supra.
Furthermore, Bonner's argument regarding the disparity between the sentences of Bonner and Hobbs is meritless, because there is no requirement that co-defendants be treated equally by the sentencing judge. See State v. Rogers, 405 So.2d 829 (La.1981). Accordingly, these arguments and assignments of error are without merit.

CONCLUSION
For the foregoing reasons, Lionel Bonner's conviction and sentence are affirmed.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
With this conviction resting solely on the uncorroborated testimony of an accomplice, I find reversible error in the trial court's refusal to declare a mistrial upon the prosecutor's comments regarding the defendant's failure to come forward to testify in his own defense, and I therefore respectfully dissent.
In the prosecutor's closing argument, there were multiple references to the defendant's failure to give a statement to police and to otherwise give testimony in his own defense:
"... when did Lionel Bonner come forward?"
"... why didn't [Bonner] go to the police the minute after he got out of the cab?"
"... neither of these men reported the crime."
Not surprisingly, when the first rhetorical question was asked concerning Bonner's failure to "come forward," that glaring reference to the Fifth Amendment required no argument from defense counsel, who simply said "objection" and received from the court, "sustained."
"The purpose behind the rule `is to prevent attention from being drawn to the fact that the defendant has not testified in his own behalf,' and to prevent the jury from drawing unfavorable inferences from the fact." State v. Bourque, 622 So.2d 198, 240 (La.1993) [overruled on other grounds in State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16, cert. denied, 522 U.S. 1150, *11 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998)], citing State v. Fullilove, 389 So.2d 1282, 1284 (La.1980). Particularly, when the defendant alone, as shown by the state's evidence, is the only potential defense witness that can rebut his involvement in the crime, such comments flaunt the defendant's failure to testify and violate the Fifth Amendment protection.
The test under La.C.Cr.P. art. 770 is whether these remarks directly or indirectly reference the failure of the defendant to testify in his own defense. That test is never employed in the majority opinion which discounts the significance of these comments as being a part of the "contrasting" argument of the state. That "contrast" reflected in the state's argument was that while the accomplice, Hobbs, only came forward to shift the blame for this murder four years after his arrest, "when has Lionel Bonner ever come forward?" I submit the obvious answer to that question is that Bonner never testified regarding the crime, not even in his own defense as he sat before the prosecutor that day. Whether post-arrest or when given the opportunity to testify at trial, the defendant failed to speak in his own defense. The prosecutor's repeated arguments drove home that point using post-arrest silence and silence at trial as evidence of guilt.
I would hold that the comments of the prosecutor directly reference Bonner's right against self-incrimination after his arrest when he failed to "come forward" post-arrest like Hobbs and at his trial. Nevertheless, even in cases involving indirect references, the mistrial provision of Article 770 still allows for reversal under the jurisprudence. In State v. Johnson, 541 So.2d 818 (La.1989), the prosecutor made a more general comment that "nobody" came forward and took the stand for the defense. Finding this comment to be an indirect reference to the defendant's failure to testify, the court determined that the prosecutor's error was not harmless and reversed the conviction. The court explained:
When our cases speak of the need to ascertain the "intention" of a prosecutor's reference to the unrebutted nature of the state's case, we of course do not envision the impossible task of reading what was actually in the prosecutor's mind at the time the statement was made. Instead, the test we have employed for determining the "intent" of such a statement is as follows.
In cases where the prosecutor simply emphasized that the state's evidence was unrebutted, and there were witnesses other than the defendant who could have testified on behalf of the defense but did not do so, we have held that the prosecutor's argument did not constitute an indirect reference to the defendant's failure to take the stand.
On the other hand, where the defendant is the only witness who could have rebutted the state's evidence, "a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify" and mandates a mistrial.
Id. at 822-823 (citations omitted).
Additionally, while I believe that the failure to "come forward" comment is not limited to any particular period of time, it at least was a reference to Bonner's post-arrest silence. The "contrasting" argument of the prosecutor was that Hobbs had been in jail between 1997 and 2001 but finally came forward to detail Bonner's participation in the crime, and the state then posed the question, "when did Lionel Bonner," who had also been jailed since 1997, ever "come forward?"
"Every post-arrest silence is insolubly ambiguous because of what the state is *12 required to advise the person arrested." Doyle v. Ohio, 426 U.S. 610, 617, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In State v. Arvie, 505 So.2d 44, 47 (La.1987), the court explained:
Thus, the prosecutor may not use the fact of an accused's exercise of his constitutional right to remain silent, after he has been advised of this right, solely to ascribe a guilty meaning to the silence or to undermine by inference an exculpatory version related by the accused for the first time at trial. The record in this case makes it evident that the sole purpose of the prosecutor's questions was to emphasize to the jury that defendant at the time of his arrest (the time when a lay person might expect the accused to come forward immediately with the truth) did not claim that the intercourse was consensual. The problem inherent in Doyle was present in this case  the prosecutor attempted to use the fact of defendant's silence to persuade the jury that defendant had nothing to say in his defense, although the silence may merely have meant that defendant was relying on the arresting officer's assurance that he had the right to remain silent. Since the trial was essentially a swearing match between the only two witnesses to the incident, this improper use of the fact of post-arrest silence for impeachment purposes would arguably warrant a reversal.
(Emphasis supplied). With this case essentially a match between Hobbs' self-serving testimony and Bonner's silence, the prosecutor improperly used Bonner's post-arrest silence as evidence of guilt.
Though the Johnson case expressed some doubt regarding the application of harmless-error analysis because of the express mandatory mistrial language of Article 770 for indirect prosecutorial remarks, the court in its latest treatment of the issue applied the harmless-error test. State v. Legrand, 02-1462 (La.12/3/03), 864 So.2d 89. The court also noted that "[a]t the federal level, comments on a defendant's Fifth Amendment privilege not to testify have been subject to harmless-error analysis since United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)." Id. note 14.
Because of the weakness of the state's case, employment of the harmless error test does not allow me to say that the verdict was surely unattributable to the prosecution's implication that Bonner never came forward to dispute the uncorroborated testimony of Hobbs. Uncorroborated testimony of accomplices has its own large set of problems.
First, Hobbs' testimony is filled with discrediting factors. Hobbs alone was repeatedly linked to the crime by all of the direct evidence before and after the murder. The state's witness who received the telephone call to dispatch the taxi identified Hobbs as the one who made the call. Hobbs alone was seen in a video from the liquor store before the taxi's arrival. In his attempt to shift blame and curry favor, Hobbs denied making the telephone call and labeled Bonner as the mastermind of the plan to rob the victim and the victim's executioner. After agreeing in 2001 to testify to Bonner's involvement, Hobbs additionally received the reduced charge of simple robbery to which he was allowed to plea.
Second, the accomplice's testimony of Bonner's participation in the crime is uncorroborated. "For an accomplice's testimony to be materially corroborated, `it is enough if there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relation to the situation.'" State v. Castleberry, 98-1388 (La.4/13/99), 758 So.2d 749, *13 citing United States v. Lee, 506 F.2d 111 (D.C.Cir.1974). All of the direct evidence corroborates only Hobbs' participation in the crime. The circumstantial evidence that came closest to linking Bonner to the crime was his trip with Hobbs to their aunt's house on the morning after the crime. Their aunt's testimony independently placed the men together hours after the murder. Yet, because they are cousins and Bonner had recently been living with his aunt, the testimony of their actions on that date gives no clear inference tying Bonner and Hobbs together at the liquor store the night before when the robbery/murder transaction began.
Next, as noted by the majority in footnote 3, the jury was not charged regarding the problems associated with the uncorroborated testimony of an accomplice. "The trial judge should charge the jury to regard an accomplice's testimony with great caution." Id. at 761. An example of such "great caution" charge was sanctioned by the supreme court in State v. Hamilton, 312 So.2d 656, 659 (La.1975), as follows:
The jury may convict upon his (accomplice) uncorroborated testimony and while it is not the rule of law it is rather the rule of our experience in dealing with that class of testimony, that while you may convict upon the uncorroborated testimony of an accomplice, still you should act upon his testimony with great caution, subjected to a careful examination in the light of the other evidence in the case, and you are not to convict upon such testimony alone, unless satisfied, after a careful examination, of its truth, and also that you can safely rely on it.
The federal courts have also indicated that the failure to give a special accomplice charge is plain error that affects substantial rights when the government's case rests solely on uncorroborated accomplice testimony. United States v. Gardner, 244 F.3d 784 (10th Cir.2001); United States v. Bosch, 914 F.2d 1239 (9th Cir.1990); United States v. Hill, 627 F.2d 1052 (10th Cir.1980); United States v. Martin, 489 F.2d 674 (9th Cir.1973), cert. denied, 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974).
Finally, a conviction resting on uncorroborated accomplice testimony alone is inherently weak. Some states through statute or jurisprudence prevent such convictions because of an insufficiency of evidence to establish guilt beyond a reasonable doubt. Minn.Stat. § 634.04; Cal.Penal Code § 1111; Taylor v. State, 10 S.W.3d 673 (Tex.Crim.App.2000); Bradford v. State, 261 Ga. 833, 412 S.E.2d 534 (Ga.1992); State v. Haugen, 448 N.W.2d 191 (N.D.1989).
In summary, there was only one source of evidence that the defense could produce to rebut Hobbs' testimony that Bonner was in the taxi, and committed the murder. Bonner had to testify, but he never came forward because he exercised his Fifth Amendment privilege. That emphasis to the jury should have resulted in a mistrial in this case. The jury was not charged to exercise great caution in crediting the uncorroborated testimony of Hobbs. Thus, with the state's thin case resting solely on Hobbs' testimony, it cannot be said that the verdict was surely unattributable to the prosecutor's error in reminding the jury of Bonner's failure to testify in his own defense. Because of this significant trial error, the case should be tried again.
NOTES
[1] Bastrop and Mer Rouge are both located in Morehouse Parish.
[2] Notably, when police searched Hobbs' home, they found the pawn ticket from Freeland's Pawn Shop where Hobbs had pawned Watson's pistol. Coincidentally, Watson had also purchased the pistol from Freeland's. It appears that the "pawn ticket" found on the railroad tracks when Watson's cab was discovered was related to that purchase.
[3] Although a conviction can be sustained on the uncorroborated testimony of a purported accomplice, the jury "should be instructed to treat such testimony with great caution." State v. Rabun, 38,655 (La.App.2d Cir.08/18/04), 880 So.2d 184, citing, State v. May, 339 So.2d 764 (La.1976). However, the May court further noted that a contemporaneous objection by the accused is a necessary prerequisite to appellate relief on an alleged inadequate jury charge. Here, the jury did not receive the instruction, but because no such objection was brought by the defense, the issue cannot be considered on appeal.