STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1182

STATE OF LOUISIANA

VERSUS

ROLAND A. AUTHEMENT, JR.

************

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-305-05
HONORABLE HERMAN I. STEWART, JR.
DISTRICT COURT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Marc T. Amy, J. David Painter, and James T. Genovese, Judges.

AFFIRMED.

Roland A. Authement, Jr.
In Proper Person
Allen Correctional Center #165331 MB2
3751 Lauderdale Woodyard Road
Kinder, Louisiana 70648

W. Jarred Franklin
Louisiana Appellate Project
3001 Old Minden Road
Bossier City, Louisiana 71112
(318) 746-7467
COUNSEL FOR DEFENDANT/APPELLANT:
        Roland A. Authement, Jr.

**David W. Burton - District Attorney**
**ADA Richard F. Blankenship**
**Post Office Box 99**
**DeRidder, Louisiana 70634**
**(337) 463-5578**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GENOVESE, Judge.**

On February 17, 2006, the Defendant, Roland A. Authement, Jr., was charged by an amended bill of information with one count of possession of a controlled dangerous substance (methamphetamine), in violation of La.R.S. 40:967(C), and one count of possession of a controlled dangerous substance (cocaine), in violation of La.R.S. 40:967(C).[1] On February 24, 2006, pursuant to trial by jury, the Defendant was found guilty of both counts.

On June 28, 2006, the Defendant was sentenced to nine years at hard labor on each count, with credit for time served, and with the sentences to run concurrently. In addition, the Defendant was ordered to pay a fine in the amount of $2,500, plus costs of court, on each count. The Defendant orally motioned for an appeal, and the Defendant is now before this court alleging the following assignments of error:

1)     insufficient evidence to prove his guilt beyond a reasonable
        doubt; and

2)     excessive sentences imposed for this offender and these offenses.

The Defendant also asserts the following pro se supplemental assignments of error:

1)     that he is constitutionally entitled to a trial before a twelve-
        member jury;

2)     that he has a constitutional right to testify on his own behalf
        before a jury; and

3)     that he is constitutionally entitled to a fair and impartial trial.

For the following reasons, the Defendant's convictions and sentences are affirmed.

**FACTS**

The following facts were adduced at trial. Just before midnight on March 17,

---

[1]The Defendant was originally charged with possession with intent to distribute on each count under La.R.S. 40:967(A). However, the charges were later reduced based on the weight of the drugs recovered from the Defendant.

2005, Deputy Clyde Kellogg ("Deputy Kellogg") of the Beauregard Parish Sheriff's Office ("BPSO") responded to a call from the dispatcher to assist a stalled motorist on Highway 112. Upon his arrival, Deputy Kellogg observed the Defendant attempting to move a dark-colored, small pick-up truck off the road. Deputy Kellogg asked the Defendant for a driver's license, which he was unable to produce; consequently, Deputy Kellogg radioed the dispatcher with the Defendant's name and date of birth to determine the status of the Defendant's driver's license. In response, the dispatcher informed Deputy Kellogg that the Defendant's driver's license was suspended. Upon inquiry, the Defendant informed Deputy Kellogg that the truck had run out of gas and that his friend would be back shortly. While waiting for the friend to return with gas, Deputy Daniel Tew ("Deputy Tew") with the BPSO arrived on the scene. Shortly thereafter, the Defendant's friend returned with gas for the truck.

According to Deputy Kellogg's testimony, which was subsequently corroborated by Deputy Tew's testimony, after the Defendant's friend returned with the gas, both he and the Defendant behaved in a nervous and anxious manner and encouraged the officers to leave, thus causing the officers to become suspicious. Thereafter, Deputy Kellogg asked the Defendant if there was anything illegal in the truck. The Defendant replied that he was a former drug user, but had been "clean" since 2003, and that the deputy was free to search his truck. Initially, Deputy Kellogg discovered a butane lighter and steel wool on the floorboard of the truck. Upon further investigation, Deputy Kellogg retrieved a green jacket in the cab of the truck that contained a metal tube with burnt steel wool in one end, indicative in his experience and training as a law enforcement officer as drug paraphernalia used to smoke crack cocaine or methamphetamine. Thereafter, the Defendant was arrested for possession of drug paraphernalia; he was patted down, handcuffed, and placed in

2

Deputy Tew's cruiser. Deputy Kellogg subsequently requested that a canine unit be dispatched for further investigation of the pick-up truck, which lead to the discovery of additional drug paraphernalia. After completing the search of his pick-up truck, the Defendant was transported to the Beauregard Parish Jail for booking and, thereafter, turned over to the custody of Deputy Derek Smith ("Deputy Smith"), the booking officer on duty. Deputy Kellogg then placed the evidence recovered from the Defendant's pick-up truck in the evidence locker at the Beauregard Parish Jail.

After being turned over to Deputy Smith, the Defendant was processed and then issued among other items: a jail uniform, sheets, a blanket, shower shoes, various personal toiletries, and a roll of toilet paper. After being issued the aforementioned items, the Defendant was ordered to change into his jail uniform. After changing, the Defendant was given a paper bag in which he placed his clothes and the other items that he had been issued by Deputy Smith. At this point, Deputy Smith was notified by his supervisor of other duties that need to be tended to; consequently, Deputy Smith decided to place the Defendant in a holding cell. Deputy Smith testified that prior to placing the Defendant in the holding cell, he visually checked the cell to make sure it was free from any contraband. Upon his return to the holding cell, Deputy Smith informed the Defendant that he needed to be stripped searched. Upon opening the cell, Deputy Smith became suspicious when he observed the Defendant stuff something into the core of the roll of toilet paper and then stuff the roll of toilet paper in the bag that contained his personal belongings. Deputy Smith then took the Defendant to a nearby bathroom where he conducted a strip search in which no contraband was discovered. After the strip search, Deputy Smith returned to the book-in desk and placed the bag with the Defendant's personal belongings on the desk. He retrieved the roll of toilet paper and looked in its core

3

where he discovered something stuffed inside. Deputy Smith pushed the contents of the core out. Said contents appeared to be a rolled up brown paper towel which contained three small clear Zip-lock bags. One bag contained a clear substance, and the other two bags contained some type of yellowish substance. Thereafter, Deputies Kellogg and Tew were notified of Deputy Smith's findings and subsequently returned to the book-in area. They retrieved the three Zip-lock bags, labeled them, and placed them in the evidence locker. The Defendant was subsequently charged with one count of possession with intent to distribute a controlled dangerous substance (methamphetamine), in violation of La.R.S. 40:967(A), and one count of possession with intent to distribute a controlled dangerous substance (cocaine), in violation of La.R.S. 40:967(A). Subsequent tests of the contents of the three Zip-lock bags revealed that the clear substance was cocaine base, and the yellowish substance in the two other bags was methamphetamine.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the Defendant asserts that there was insufficient evidence presented at his trial to convict him of possession of either methamphetamine or cocaine. The thrust of the Defendant's argument is that the State failed to prove that the Defendant knowingly or intentionally possessed the narcotics discovered by Deputy Smith.

In *State v. Touchet,* 04-1027, pp. 1-2 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 902, this court opined:

> With regard to sufficiency of the evidence, this court set forth as follows in *State v. Lambert,* 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27:
>
>> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

4

have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In order for this court to affirm a conviction, the record must reflect that the State has satisfied this burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

The Defendant in this case was convicted of two counts of possession of a controlled dangerous substance, in violation of La.R.S. 40:967(C), which states in pertinent part: "[i]t is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II. . . ." Thus, the State had to prove two elements: 1) the Defendant knowingly or intentionally; 2) possessed a controlled dangerous substance. We find that there was sufficient evidence presented at trial for a jury to conclude that the State proved beyond a reasonable doubt the essential elements of the offense of possession of methamphetamine and cocaine.

In the present case, the evidence at trial established that Deputy Smith retrieved three small Zip-lock bags containing narcotics from a roll of toilet paper that had been issued to the Defendant, wherein the roll was retrieved from a bag that contained the Defendant's personal effects over which he had exclusive control. The Defendant asserts that no evidence was adduced at trial to prove that the roll of toilet paper retrieved by Deputy Smith, which contained narcotics, was the same roll that he had

5

issued to the Defendant earlier.

At trial, Deputy Smith testified that a roll of toilet paper, among other items, was issued to the Defendant after he had been booked into the jail. Deputy Smith further testified that prior to placing the Defendant in the holding cell, he had the Defendant change into a prison uniform and gave him a paper bag in which to place his personal belongings. Prior to placing the Defendant in the holding cell, Deputy Smith stated that he visually checked the cell to make sure that it was free from any contraband. His check of the cell led him to believe that there was no contraband in the cell and, consequently, he placed the Defendant in the cell. Thereafter, Deputy Smith returned to the cell to conduct a strip search of the Defendant as part of the booking process. Upon his return, he noticed that the Defendant shoved something into the roll of toilet paper that he had been issued and then put the roll of toilet paper in the paper bag that he was using to hold his personal items. After conducting a strip search of the Defendant, where no contraband was found on his immediate person, Deputy Smith proceeded to retrieve the roll of toilet paper that the Defendant had placed in the paper bag with the rest of his belongings. Upon inspection of the roll of toilet paper, Deputy Smith discovered a brown paper towel stuffed in the core. Covered by the paper towel were three small Zip-lock bags containing substances he believed to be drugs. Deputy Smith notified his supervisor who, in turn, requested that Deputies Kellogg and Tew return to the jail's book-in area where they received the evidence, labeled it, and placed it in the evidence locker.

In *State v. Carmack*, 39,823 (La.App. 2 Cir. 6/29/05), 907 So.2d 868, the appellate court held that a person does not have to be in actual possession of a controlled substance. One may be in constructive possession if the controlled substance is subject to his control and dominion, and if he has knowledge of the

6

controlled substance. In *Carmack*, the defendant was convicted of possession of a controlled dangerous substance where, upon command from a law enforcement officer, the defendant removed his hands from his pockets at which time he flipped a small bag out of his hand onto the ground next to him. The bag was later determined to have contained cocaine. Likewise, in *State v. Walker*, 99-1957 (La.App. 4 Cir. 5/17/00), 764 So.2d 1130, the appellate court affirmed a conviction for possession of a controlled dangerous substance where the defendant, who had been urinating on the side of a house when the police approached, placed a match box on the porch of the house; said box later was determined to have contained crack cocaine. Finally, in *State v. Guillard*, 98-504, p. 4 (La.App. 4 Cir. 4/7/99), 736 So.2d 273, 276, the appellate court stated, "[t]he elements of knowledge and intent are states of mind and need not be proven as facts, but rather may be inferred from the circumstances. The factfinder may draw reasonable inferences to support these contentions based upon the evidence presented at trial."

Based on the testimony presented at trial, it is plausible that the jury reasonably inferred from the facts of this case, that the Defendant did knowingly and intentionally possess methamphetamine and cocaine; therefore, he was properly convicted. The Defendant's assignment of error is without merit.

**ASSIGNMENT OF ERROR NO. 2**

In his second assignment of error, the Defendant alleges that his sentence is excessive for this offender in this case. The Defendant further alleges that the trial court failed to list the factors considered under La.Code Crim.P. art. 894.1 and failed to consider the Defendant's family history or work history.

At his sentencing hearing, counsel for the Defendant objected to the sentence as being excessive. Furthermore, while a motion to reconsider sentence was not

explicitly made, defense counsel's objection to the sentence could be construed as an oral motion to reconsider sentence which is permissible under La.Code Crim.P. art. 881.1(B). However, defense counsel never articulated any basis or specifics as to why the sentence was excessive. Therefore, we are evaluating this claim as a bare claim of excessiveness. *State v. Mims*, 619 So.2d 1059 (La.1993).

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

In order to determine whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "[i]t is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1[, 3] (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each

case." *State v. Cook*, 95-2784[, 2] (La. 5/31/96), 674 So.2d 957, 958. *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

In the instant case, the Defendant was convicted of two counts of possession of a controlled dangerous substance, in violation of La.R.S. 40:967(C). The sentence for possession of these controlled dangerous substances is not less than two years and not more than five years and a fine of up to $5,000 on each count. Additionally, because the Defendant had been previously convicted of other drug offenses, his sentences were enhanced in accordance with La.R.S. 40:982(A), which allowed the trial court to sentence the Defendant up to twice the maximum term of the instant offense, i.e., up to ten years for each count and a fine of up to $10,000.[2]

In this case, the Defendant was sentenced to nine years on each count, with the sentences to run concurrently, and ordered to pay a fine of $2,500. This is less than the maximum of ten years and a $10,000 fine that could have been imposed for each count. At the sentencing hearing, the trial court stated: "there are no mitigating factors the Court should consider in arriving at the proper sentence for you. I have taken into account all of the provisions of Code of Criminal Procedure Article 894.1 in determining your sentence." Furthermore, the trial court noted in reviewing the Defendant's PSI that:

> [Y]ou have a very extensive criminal history, dating back to an arrest in 1976 . . . you have been arrested at least 25 times. You presently have felony drug charges against you in Acadia Parish and Evangeline Parish.
>
> You are now 46 years of age, and there has been no extended period during your adult life in which you were not involved in some criminal activity.

The trial court also noted that the Defendant had been convicted of attempted simple

---

[2]In 1977, the Defendant was convicted of possession of marijuana, and in 1991, he pled guilty to possession of cocaine and was incarcerated for three years.

burglary in 1984.

When imposing a sentence, the trial court is not required to list each aggravating and mitigating factor articulated under La.Code Crim.P. art. 894.1; however, the record should reflect that the sentence has been particularized to the party being sentenced. *State v. Smith*, 433 So.2d 688 (La.1983). We find that the trial court's thorough reasoning reflects that the sentence was particularized to this Defendant. Accordingly, we find that the trial court did not abuse its discretion when it sentenced the Defendant.

PRO SE ASSIGNMENT OF ERROR NO. 1

The Defendant asserts that the trial court erred when it submitted his case to a six-member jury for deliberations. The Defendant bases his assertion on La.Const. art. I, §17, which states, in pertinent part, "[a] case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict." While this statement is true, the Defendant was convicted of two counts of possession of a controlled dangerous substance in violation of La.R.S. 40:967(C), which is punishable with *or* without hard labor; hence, the Defendant's sentencing exposure did not constitute a case where punishment was necessarily confinement at hard labor which would have required a twelve-member jury. A six-member jury in this case is correct.

In *State v. Marcantel*, 388 So.2d 383 (La.1980), the supreme court held that defendants, who were charged with crimes punishable with or without hard labor, could not be tried before a jury of twelve persons, but had to be tried before a six-person jury. Because the punishment for a violation of La.R.S. 40:967(C) is with or without hard labor, the trial court did not error when it submitted the Defendant's case to a six-member jury for deliberation. This pro se assignment of error is without

10

merit.

PRO SE ASSIGNMENT OF ERROR NO. 2

The Defendant asserts that his constitutional rights were violated because he was not allowed to testify on his own behalf. In support of his assertion, the Defendant cites several cases, including *State v. Johnson*, 482 So.2d 146 (La.App. 4 Cir. 1986). In *Johnson*, the appellate court reversed a jury verdict on the basis that the trial court refused to allow the defendant to testify on his own behalf. During the trial in *Johnson*, prior to the matter being submitted to the jury, the defendant stated, "I have a right to take the stand. I want the record to reflect that." *Id*. at 147.

In this case, a through review of the trial record failed to reveal any type of objection by the Defendant that he was being deprived of the right to testify. Furthermore, there is nothing in the trial record that could be construed as the Defendant seeking to assert his right to testify at trial as in *Johnson*. Consequently, the trial court did not deprive the Defendant of his right to testify on his own behalf. This pro se assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 3

The Defendant alleges that he was deprived of a fair and impartial trial. In his brief, he notes several instances of inconsistent testimony offered by the prosecution's witnesses. The Defendant also makes the broad allegation that his counsel was ineffective and, consequently, that he was denied the effective assistance of counsel as guaranteed by the constitutions of Louisiana and the United States.

In addressing the Defendant's first allegation, inconsistent testimony offered by the prosecution, we note that the inconsistencies that the Defendant complains of are not related to the crimes for which he has been tried and convicted. Consequently, there is no basis to address this issue.

11

Additionally, most of the Defendant's allegations of ineffective assistance of counsel deal with claims which are not related to the offenses for which he was tried and convicted. However, there is one issue raised by the Defendant which merits our consideration. The Defendant alleges that his attorney was ineffective when he failed to move for a mistrial after a juror allegedly observed the Defendant *outside* the courtroom in restraints and, as a result thereby, he claims he was prejudiced. The second circuit addressed this issue in *State v. Thornton,* 36,757, p. 9 (La.App. 2 Cir. 1/29/03), 836 So.2d 1235, 1241, *writ denied*, 03-861 (La. 10/31/03), 857 So.2d 474:

> Absent exceptional circumstances, a defendant before the court should not be shackled, handcuffed, or garbed in any manner destructive to the presumption of innocence or detrimental to the dignity and impartiality of the judicial proceedings. *State v. Stephens*, 412 So.2d 1057 (La.1982); *State v. Plater*, 26,252 (La.App. 2d Cir.09/21/94), 643 So.2d 313, *writ denied*, 94-2608 (La.02/03/95), 649 So.2d 402. For a finding of reversible error, the record must show an abuse of the trial court's reasonable discretion resulting in a clear prejudice to the accused. *Plater, supra.* The momentary use of restraints for the limited purpose of transporting the accused does not mandate a mistrial even when a juror sees a defendant being transported on two occasions. *State v. Jones*, 31,613 (La.App.2d Cir.04/01/99), 733 So.2d 127, *writ denied*, 99-1185 (La.10/01/99), 748 So.2d 434.

In the instant case, the record is absent of any indication that a juror viewed the Defendant outside the courtroom in restraints. On this basis alone, the allegation of ineffective assistance of counsel is without merit. Even assuming arguendo that a juror had viewed the Defendant outside the courtroom in restraints, considering the court's holding in *Thornton*, said incident would not have been a basis for a mistrial. Therefore, under the facts in this case, the failure of Defendant's attorney to move for a mistrial is not deemed to be ineffective assistance of counsel. Consequently, the Defendant's allegation of ineffective assistance of counsel is without merit.

**DECREE**

The Defendant's convictions and sentences on the charges of possession of

methamphetamine and cocaine, in violation of La.R.S. 40:967(C), are affirmed.

**AFFIRMED.**